# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1735-J |
| COMPLETE TITLE: | In the Matter of Judicial Disciplinary Proceedings Against the Honorable Frank M. Calvert. |

Wisconsin Judicial Commission,
        Complainant,
    v.
The Honorable Frank M. Calvert,
        Respondent.

---

JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST CALVERT

---

| | |
|---|---|
| OPINION FILED: | June 15, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the complainant, there was a brief filed by *Jeremiah Claude-Benedict Van Hecke* and the *Wisconsin Judicial Commission,* Madison.

For the respondent, there was a brief filed by *The Honorable Frank M. Calvert.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1735-J

STATE OF WISCONSIN       :       IN SUPREME COURT

**In the Matter of Judicial Disciplinary Proceedings Against the Honorable Frank M. Calvert:**

**Wisconsin Judicial Commission,**

      **Complainant,**

      **v.**

**The Honorable Frank M. Calvert,**

      **Respondent.**

**FILED**

**JUN 15, 2018**

Sheila T. Reiff
Clerk of Supreme Court

JUDICIAL disciplinary proceeding. *Commissioner suspended from office.*

¶1 PER CURIAM. We review, pursuant to Wis. Stat. § 757.91 (2015-16),[1] a Judicial Conduct Panel's findings of fact,

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated. Wisconsin Stat. § 757.91 provides:

> The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct and appropriate action in cases of

(continued)

conclusions of law, and recommendation for discipline for the Honorable Frank M. Calvert, a court commissioner for the Oconto County Circuit Court. We conclude that a 15-day suspension is the appropriate discipline for Commissioner Calvert's judicial misconduct.

¶2 Commissioner Calvert has been a circuit court commissioner for Oconto County for 19 years. He has not been the subject of any prior disciplinary action by the Wisconsin Judicial Commission.

¶3 The Judicial Commission filed a complaint against Commissioner Calvert on September 8, 2017, alleging that he had engaged in judicial misconduct by his actions, described below, in presiding over an action seeking a harassment injunction.

¶4 Commissioner Calvert did not file an answer to the complaint, which led the Judicial Commission to file a motion for default judgment. On January 2, 2018, Commissioner Calvert filed a letter with this court stating that he did not contest the facts alleged in the complaint.

¶5 Consistent with an order issued by the Judicial Conduct Panel, the parties filed briefs on the issue of the appropriate discipline to be imposed. After receiving these briefs, the Judicial Conduct Panel made findings of fact based on the uncontested allegations of the complaint. On the basis

---

permanent disability. The rules of the supreme court applicable to civil cases in the supreme court govern the review proceedings under this section.

of those facts, the Judicial Conduct Panel made conclusions of law and recommended that this court suspend Commissioner Calvert for no fewer than five and no more than 15 days. This recommendation exceeded the disciplinary sanction that Commissioner Calvert suggested in his brief to the panel and in his January 2, 2018 letter to the court: a reprimand. The panel's recommendation more closely followed the sanction proposed by the Judicial Commission, which suggested discipline ranging from a reprimand to a short suspension.

¶6 The facts giving rise to the complaint are as follows. In September 2015, Commissioner Calvert received and reviewed a petition for a harassment injunction and a request for a temporary restraining order filed by the attorney for the petitioners against the respondents, who were the petitioners' next-door neighbors. This legal action was part of an ongoing dispute between the petitioners and the respondents. The petitioners alleged that the respondents had engaged in repeated harassment of the petitioners, including pointing surveillance cameras at the petitioners' house to record the petitioners' conduct.

¶7 Before holding any hearing or deciding whether to grant the petitioners' request for a temporary restraining order, Commissioner Calvert, on his own initiative, went to the City of Oconto Police Station and spoke with the City of Oconto Police Chief concerning the allegations in the petition. Commissioner Calvert asked for and obtained from the police chief a summary regarding the history of complaints and

3

conflicts between these neighbors and their contacts with the Oconto Police Department over the years. The police chief told Commissioner Calvert that he had visited the respondents' residence and that there were no cameras pointed at the petitioners' property.

¶8 Commissioner Calvert also reviewed the neighbors' "contact file" kept by the Oconto Police Department, which included statements of police relating to the conflict, and asked the police chief if there was any basis for a citation to be issued. None of the parties to the case or the petitioners' attorney was present for Commissioner Calvert's conversation with the police chief or given advance notice of it.

¶9 Commissioner Calvert denied the petitioners' request for a temporary restraining order. In doing so, he considered the information provided by the police chief and contained in the police "contact file" regarding the neighbors.

¶10 At an injunction hearing held on October 1, 2015, Commissioner Calvert heard the testimony of several witnesses and arguments from both sides. Commissioner Calvert denied the injunction request. Before announcing his ruling, Commissioner Calvert did not disclose to the parties or the petitioners' attorney his contact with the police chief or that he had reviewed the police "contact file."

¶11 After denying the injunction request, Commissioner Calvert made the following statements:

> What is going to happen, though, is that anything
> between these two neighbors is going to stop as of

4

today. Period. End of story. And how it's going to stop is this: I've already talked to [the police] chief [ . . . ] as of yesterday. What's going to happen is, if you call the Oconto Police Department, or the Sheriffs Department, or, you call them, they are going to come out, they are not going to have to listen as to what took place because if they get called out to either of your places, complaining about each other, what's going to happen—they're going to issue mutual disorderly conduct tickets. So, I don't care who calls. You call, either of you call, they are going to come out, they are going to issue a disorderly conduct to you and they are going to issue a disorderly conduct to you. Alright?

Now, if you wish to take that ticket into municipal court, and argue about whether you were disorderly or not, go ahead because I've already talked to [the municipal judge] in Oconto [ . . . ] and I've told him the problem with this situation, enough is enough, it's been going on for twelve/thirteen years, I'm putting an end to it, and I told him, "I don't care what either one of you say." He's going to find you guilty and issue you a fine. He knows that, he's with it, he's tired of it, the Police Department's tired of it, alright? If you want to de novo his decision, which you have a right to do[,] under the statute[,] upon finding you guilty, that's fine because it'll get de novo'd and it'll get de novo'd up here to me and guess what's going to happen? I'm going to uphold it and you're both going to pay a fine.

Now, with regard to a court commissioner, you have a right to de novo that, too. Go ahead because I'm gonna tell either one of these circuit court judges, "Enough is enough. This is how we're going to handle it." I want nothing further going on.

¶12 In fact, Commissioner Calvert had not, as he told the parties, directed the police chief to issue mutual disorderly conduct citations to the neighbors regardless of fault, and he had not, as he told the parties, directed the local municipal

5

judge (who would handle any citations) to find the neighbors guilty regardless of fault.

¶13 After pronouncing his ruling, but before the hearing concluded, Commissioner Calvert admitted to the parties that the police chief had previously told Commissioner Calvert that he had visited the respondents' residence and looked for cameras, and believed that there had been no cameras pointed at the petitioners' property.

¶14 No party sought de novo review of Commissioner Calvert's decision denying the injunction.

¶15 Subsequent to the October 1, 2015 hearing, Commissioner Calvert advised the person he regarded as his senior circuit court judge of his post-ruling comments to the parties, acknowledged to this judge that his comments had gone "beyond the normal course of action," and indicated that he intended all of his conduct in the case only to end a long standing neighbor conflict.

¶16 After his handling of the injunction case in October 2015, Commissioner Calvert has three times (annually) been reappointed as a court commissioner.

¶17 The complaint alleged, and the Judicial Conduct Panel concluded, that by initiating contact and then speaking in detail with the City of Oconto Police Chief, obtaining the police chief's summary of the complaints and conflicts between the parties to the injunction action, reviewing the police "contact file," and being informed by the chief that no cameras had been pointed at the petitioners' property, Commissioner

Calvert violated SCR 60.04(1)(g),[2] which prohibits judicial officials from initiating, permitting, engaging in, or considering ex parte communications concerning pending actions or proceedings.

¶18 The complaint alleged further, and the Judicial Conduct Panel concluded, that by initiating contact and then speaking in detail with the City of Oconto Police Chief, obtaining the police chief's summary of the complaints and conflicts between the parties to the injunction action, reviewing the police "contact file," and being informed by the chief that no cameras had been pointed at the petitioners' property, Commissioner Calvert violated SCR 60.04(1)(g), which

---

[2] SCR 60.04(1)(g) provides:

A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding except that:

1. A judge may initiate, permit, engage in or consider ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits if all of the following conditions are met:

a. The judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication.

b. When the ex parte communication may affect the substance of the action or proceeding, the judge promptly notifies all of the other parties of the substance of the ex parte communication and allows each party an opportunity to respond.

7

prohibits judicial officials from independently investigating facts in a case.

¶19 The complaint alleged further, and the Judicial Conduct Panel concluded, that by telling the parties, falsely, that he had convinced local law enforcement and the municipal court judge to agree that any further police calls to the neighbors would result in disorderly conduct tickets to all involved, which would be sustained throughout the judicial system regardless of the circumstances; telling the parties that he himself in his official capacity would sustain such tickets, regardless of the circumstances; and telling the parties that he planned to convince the county circuit court judges to sustain such tickets, regardless of the circumstances, Commissioner Calvert violated his obligation, pursuant to SCR 60.03(1),[3] to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, and further violated his obligation, pursuant to SCR 60.02,[4] to participate

---

[3] SCR 60.03(1) provides: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

[4] SCR 60.02 provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. This chapter applies to every aspect of judicial behavior except purely legal decisions. Legal

(continued)

8

in establishing, maintaining, and enforcing high standards of conduct and to personally observe those standards.

¶20 The Judicial Conduct Panel concluded that each of these violations was willful and thus constituted judicial misconduct under Wis. Stat. § 757.81(4)(a).[5]

¶21 We adopt the panel's undisputed findings and conclusions of law. We therefore turn to the question of the appropriate discipline for the misconduct.

¶22 In imposing discipline——which may be reprimand, censure, suspension, or removal——we must bear in mind that the goal of judicial discipline is not to punish the erring judge, but to protect the public from unacceptable judicial behavior, considering both the seriousness of the judge's misconduct and the likelihood that it would recur. See In re Judicial Disciplinary Proceedings Against Crawford, 2001 WI 96, ¶38, 245 Wis. 2d 373, 629 N.W.2d 1. The sanction that we impose must also "convey to the public the gravity with which this court views judicial misconduct." Id. at ¶39. We impose discipline on a de novo basis, benefitting from but not bound by the panel's recommendation. See id. at ¶38.

¶23 In recommending a suspension between five and 15 days, the Judicial Conduct Panel found both mitigating and aggravating

---

decisions made in the course of judicial duty on the record are subject solely to judicial review.

[5] Wisconsin Stat. § 757.81(4)(a) states that misconduct includes "[w]illful violation of a rule of the code of judicial ethics."

factors. On the mitigating side, these were isolated instances of misconduct. Commissioner Calvert has not been the subject of any prior disciplinary action by the Wisconsin Judicial Commission over his 19-year career as a court commissioner. He has been reappointed as a court commissioner three times since the misconduct. He recognized his comments at the hearing were unusual and acknowledged as much by reporting the matter to a circuit court judge. The end goal of his misconduct was not to satisfy personal desires or receive any personal benefit.

¶24 On the aggravating side, the Judicial Conduct Panel noted that Commissioner Calvert's misconduct occurred in his capacity as a representative of the judicial system, both inside and outside of the courtroom. The panel further noted that, in Commissioner Calvert's brief on sanctions filed with the panel, he repeatedly asserted that the goal of his conduct was to end a long-standing dispute between neighbors, which suggests that he lacks insight regarding the need to change or modify his conduct. His misconduct also has a substantial negative impact on the integrity of and the public's perceptions of the independence of the judiciary.

¶25 The Judicial Conduct Panel cited a case that it thought was particularly analogous to this matter: In re Judicial Disciplinary Proceedings Against Carver, 192 Wis. 2d 136, 531 N.W.2d 62 (1995). In Carver, we imposed a 15-day suspension as a result of on-the-record comments that a judge made in the course of disqualifying himself at the initial appearance of a defendant——a friend of the judge——who had been

10

charged with illegal sports gambling. In those comments, the judge minimized the seriousness of the offense charged; questioned the legitimacy of the investigation and prosecution in the case before him and in other cases of sports gambling pending in other circuit court branches; and suggested to the public and to his fellow judges that minimum sentences should be imposed for such crimes. The judge also lied when he stated on the record that he had not been contacted by the defendant; the judge in fact had received two letters from the defendant pertaining to the pending case. We wrote that "[i]t is essential to the proper functioning of our judicial system that its participants and the public be assured of the objectivity and impartiality of its judges." Id. at 138. We concluded that Judge Carver's "aggravated failure to conduct himself . . . impartially, objectively[,] and truthfully" warranted a 15-day suspension from judicial office. Id. at 155. Analogizing Carver to the facts of the instant case, the panel reasoned that like Judge Carver, Commissioner Calvert made on-the-record statements that were false and that exhibited partiality. The panel recommended that a suspension similar to that imposed in Carver should be imposed here, with the length ranging from five to 15 days.

¶26 We agree with the Judicial Conduct Panel that a suspension is in order, and we conclude that a length of 15 days is appropriate. The misconduct in this case is undeniably serious. As we stated in Carver, a judge's objectivity and impartiality are critical to the proper functioning of the

11

judicial system. Commissioner Calvert's behavior was far from objective and impartial. He independently investigated the facts of a case pending before him——an effort that included engaging in an ex parte communication with the police chief. He then lied to the parties in a particularly manipulative manner, falsely claiming that he had communicated with individuals in the judicial and law enforcement systems in such a way that the parties were doomed to failure and future legal troubles should they ever seek additional recourse. We cannot abide such assurances by a judge to rig the judicial and criminal justice systems against its participants.

¶27 We are also troubled, as was the Judicial Conduct Panel, by Commissioner Calvert's argument to the panel that "it is difficult to understand how either party to this matter may have questioned fair treatment in this case when a rehearing of the matter was an available alternative and was never requested." This argument strongly suggests that Commissioner Calvert lacks insight into his own misconduct; it is no surprise the parties did not seek a de novo hearing of his decision given his assurance that he would see to it that any such effort would fail. In other words, Commissioner Calvert's argument seeks a reward for his asserted willingness to tilt the playing field against the parties. No reward will be forthcoming here.

¶28 Ultimately, we conclude that the appropriate sanction is a suspension from judicial office for a period of 15 days. This period is an adequate reflection of the seriousness of Commissioner Calvert's actions, and is necessary to promote

12

public confidence in the soundness of the judicial system. It is also consistent with our past precedent. We are confident that a 15-day suspension will impress upon Commissioner Calvert the fundamental requirements of judicial office and will demonstrate to the public our dedication to preserving judicial integrity.

¶29 IT IS ORDERED that the Honorable Frank M. Calvert is suspended from the office of circuit court commissioner without compensation and prohibited from exercising any of the powers or duties of a circuit court commissioner in Wisconsin for a period of 15 days, commencing July 16, 2018.