# Supreme Court of Wisconsin

| | |
|---|---|
| Case No.: | 2018AP1033-J |
| Complete Title: | In the Matter of Judicial Disciplinary Proceedings Against the Honorable Michael J. Piontek: |

Wisconsin Judicial Commission,
        Complainant,
    v.
the Honorable Michael J. Piontek,
        Respondent.

---

DISCIPLINARY PROCEEDINGS AGAINST PIONTEK

---

| | |
|---|---|
| Opinion Filed: | May 21, 2019 |
| Submitted on Briefs: | |
| Oral Argument: | |

| | |
|---|---|
| Source of Appeal: | |
|   Court: | |
|   County: | |
|   Judge: | |

| | |
|---|---|
| Justices: | |
|   Concurred: | |
|   Dissented: | |
|   Not Participating: | |

| | |
|---|---|
| Attorneys: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP1033-J

STATE OF WISCONSIN     :     IN SUPREME COURT

**In the Matter of Judicial Disciplinary Proceedings Against the Honorable Michael J. Piontek:**

**Wisconsin Judicial Commission,**

    **Complainant,**

    **v.**

**The Honorable Michael J. Piontek,**

    **Respondent.**

**FILED**

**MAY 21, 2019**

Sheila T. Reiff
Clerk of Supreme Court

Judicial disciplinary proceeding. *Judge suspended from office.*

¶1 PER CURIAM. We review, pursuant to Wis. Stat. § 757.91 (2015-2016),[1] a Judicial Conduct Panel's findings of

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated. Wisconsin Stat. § 757.91 provides:

> The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct and appropriate action in cases of permanent disability. The rules of the supreme court

(continued)

fact, conclusions of law, and recommendation for discipline for Racine County Circuit Court Judge Michael J. Piontek. We conclude that a five-day suspension is the appropriate discipline for Judge Piontek's judicial misconduct.

¶2 At the time of the events in question, Judge Piontek had been a circuit court judge for Racine County for about two years. Before assuming the bench, Judge Piontek was a practicing lawyer for about 38 years, including time as a county prosecutor. Until this disciplinary matter, he had never been the subject of a complaint or grievance as an attorney or judge.

¶3 The Judicial Commission filed a complaint against Judge Piontek on June 5, 2018, alleging that he had engaged in judicial misconduct by his actions, described below, in presiding over two different criminal matters.

¶4 Judge Piontek filed a response to the complaint in which he generally admitted the allegations but alleged various mitigating circumstances.

¶5 Consistent with an order issued by the Judicial Conduct Panel, the parties filed briefs on the issue of the appropriate discipline to be imposed. After receiving these briefs, the panel made findings of fact and conclusions of law and recommended that this court suspend Judge Piontek between five and 15 days. This recommendation exceeded the disciplinary sanction that Judge Piontek suggested in his brief to the panel:

applicable to civil cases in the supreme court govern the review proceedings under this section.

a public reprimand. The panel's recommendation more closely followed the sanction proposed by the Judicial Commission, which suggested discipline ranging from a reprimand to a short suspension.

¶6 The facts involved in this matter are as follows.

**The S.S. Criminal Case**

¶7 Between August 2014 and February 2015, Judge Piontek presided over a criminal case involving defendant S.S. Judge Piontek set the matter for a March 4, 2015 trial. Sometime before December 3, 2014, Judge Piontek received at his chambers an informal visit from the prosecutor assigned to the S.S. case; the prosecutor was seeking an adjournment of the trial.

¶8 On December 3, 2014, Judge Piontek telephoned the prosecutor, without including defense counsel in the call or giving defense counsel notice that he planned to make the call. During the three-minute-and-seven-second phone call, Judge Piontek told the prosecutor that he wanted S.S.'s trial to go forward on the scheduled trial date; that any plea negotiation should involve S.S. being convicted of a felony; and that people like S.S. who involve themselves "in scams like this" need to be stopped.

¶9 Judge Piontek never disclosed his December 3, 2014 conversation with the prosecutor to S.S. or S.S.'s attorney.

¶10 On or about January 29, 2015, the prosecutor sent a letter to defense counsel in which he summarized his account of the judge's December 3, 2014 phone call. Shortly thereafter, the prosecutor submitted a copy of the letter to Judge Piontek.

3

¶11 Only after receiving the prosecutor's letter did Judge Piontek recuse himself from handling the S.S. case.

¶12 During the pendency of the Judicial Commission's investigation into the S.S. matter, Judge Piontek at least twice denied the assertions made in the prosecutor's January 29, 2015 letter. In a September 18, 2015 response letter to the Judicial Commission, Judge Piontek denied that he initiated the December 3, 2014 phone call to the prosecutor, and denied making the statements attributed to him by the prosecutor. In a September 14, 2017 Response to Notice of Formal Proceedings, Judge Piontek denied that his ex parte conversation with the prosecutor involved discussions of plea negotiations. Only later, when he filed his response to the Judicial Commission's complaint, did Judge Piontek admit that he initiated the December 3, 2014 phone call. He further admitted making "off-handed comments about the manner in which he believed the case should be resolved."

¶13 The Judicial Commission's complaint alleged, and the Judicial Conduct Panel concluded, that Judge Piontek's contact with the prosecutor on December 3, 2014, constituted a willful violation of Supreme Court Rule (SCR) 60.04(1)(g),[2] which

---

[2] SCR 60.04(1)(g) provides:

A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding except that:

1. A judge may initiate, permit, engage in or consider ex parte communications for scheduling, administrative purposes or emergencies that do not

(continued)

4

prohibits ex parte communications concerning pending matters unless an exception exists under the law.

¶14 The Judicial Commission's complaint also alleged, and the Judicial Conduct Panel concluded, that Judge Piontek's contact violated his obligations:

- pursuant to SCR 60.02,[3] to participate in establishing, maintaining, and enforcing high standards of conduct and to personally observe those standards;

- pursuant to SCR 60.03(1),[4] to comply with the law and act at all times in a manner that promotes public

---

deal with substantive matters or issues on the merits if all of the following conditions are met:

a. The judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication.

b. When the ex parte communication may affect the substance of the action or proceeding, the judge promptly notifies all of the other parties of the substance of the ex parte communication and allows each party an opportunity to respond.

[3] SCR 60.02 provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. This chapter applies to every aspect of judicial behavior except purely legal decisions. Legal decisions made in the course of judicial duty on the record are subject solely to judicial review.

confidence in the integrity and impartiality of the judiciary;

- pursuant to SCR 60.04(1)(e),[5] to perform judicial duties without bias or prejudice; and

- pursuant to SCR 60.04(4),[6] to recuse himself from handling S.S.'s case earlier than he did because a reasonable, well-informed person, knowledgeable about judicial ethics, would reasonably question his ability to be impartial.

---

[4] SCR 60.03(1) provides: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

[5] SCR 60.04(1)(e) provides:

A judge shall perform judicial duties without bias or prejudice. A judge may not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice, including bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, and may not knowingly permit staff, court officials and others subject to the judge's direction and control to do so.

[6] SCR 60.04(4) provides:

Except as provided in sub. (6) for waiver, a judge shall recuse himself or herself in a proceeding when the facts and circumstances the judge knows or reasonably should know establish one of the following or when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial.

**The P.E. Criminal Case**

¶15 Between August 2014 and August 2015, Judge Piontek presided over a criminal case involving defendant P.E. P.E., a former nurse, pled guilty in June 2014 before another judicial official to two counts of delivery of non-narcotic controlled substances. A presentence investigation (PSI) was ordered, and the matter was scheduled for sentencing before Judge Piontek on October 6, 2014.

¶16 On October 3, 2014, Judge Piontek conducted an independent internet investigation concerning P.E.'s nursing licenses and related matters in several states. Judge Piontek did so because he believed that P.E. was untruthful in her comments to the PSI writer. Judge Piontek's independent internet investigation led him to discover what he believed to be incriminating information from the states of Texas and Illinois. Judge Piontek incorrectly deduced from his research that P.E. had never been licensed as a nurse in Illinois.

¶17 Prior to sentencing, Judge Piontek did not provide the parties or their attorneys with either notice of his intent to conduct his investigation or the nature of his investigation and its results.

¶18 At P.E.'s sentencing hearing, Judge Piontek waited until after the parties' arguments were completed and after P.E. exercised her right of allocution to discuss the results of his independent investigation. P.E. and her attorney did not have an opportunity to view the documents that Judge Piontek had apparently printed from his internet research. Judge Piontek

stated that, according to his independent research, P.E. never had an Illinois nursing license. When P.E. attempted to provide information about her Illinois nursing license, Judge Piontek told her that her "lies are getting [her] in trouble," suggested that she "close [her] mouth," stated that her "license in the State of Illinois does not exist," and said that he did not want any further comment from her.[7] When sentencing P.E., Judge Piontek relied on the incorrect information he had obtained from the internet regarding P.E.'s Illinois nursing license.

¶19 P.E. filed a postconviction motion requesting resentencing because Judge Piontek, at sentencing, relied on inaccurate information resulting from his internet research. At a hearing on that motion, Judge Piontek implicitly acknowledged conducting an independent investigation, asserting that he simply sought out the truth and relied on public records. Judge Piontek denied P.E.'s resentencing request, essentially taking the position that he did not rely on the inaccurate information. He claimed that "whether she had an Illinois license or didn't have an Illinois license, that wasn't a big deal to me."

¶20 P.E. appealed. The court of appeals reversed her judgment of conviction and the order denying resentencing, and remanded the matter for resentencing before a different judge. The court of appeals concluded that the record was inconsistent

---

[7] We take these quotes from the decision on P.E.'s appeal, described below, which quoted extensively from the sentencing hearing.

with Judge Piontek's assertion that he did not rely on the misinformation obtained from his independent investigation. Therefore, the court of appeals concluded, Judge Piontek denied P.E. her right to be sentenced upon accurate information.

¶21 In his brief to the Judicial Conduct Panel, Judge Piontek implicitly conceded that his independent factual investigation was not an isolated instance of this conduct. He stated that "[l]ong before his formal appearance before the Judicial Commission, Judge Piontek ceased conducting any independent factual research in cases before him." The Judicial Conduct Panel construed the plain meaning of this statement to be that Judge Piontek had conducted independent factual investigations in other "cases," but that he had stopped this practice.

¶22 The Judicial Commission's complaint alleged, and the Judicial Conduct Panel concluded, that Judge Piontek's investigation of P.E.'s background prior to sentencing constituted a willful violation of SCR 60.04(1)(g), the comment to which states, "[a] judge must not independently investigate facts in a case and must consider only the evidence presented."

¶23 The Judicial Commission's complaint also alleged, and the Judicial Conduct Panel concluded, that Judge Piontek's conduct violated his obligations:

- pursuant to SCR 60.02, to participate in establishing, maintaining, and enforcing high standards of conduct and to personally observe those standards; and

9

- pursuant to SCR 60.03(1), to comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

¶24 The Judicial Conduct Panel concluded that each of these violations was willful and thus constituted judicial misconduct under Wis. Stat. § 757.81(4)(a).[8]

¶25 We adopt the panel's undisputed findings and conclusions of law. We therefore turn to the question of the appropriate discipline for the misconduct.

¶26 In imposing discipline——which may be reprimand, censure, suspension, or removal——we must bear in mind that the goal of judicial discipline is not to punish the erring judge, but to protect the public from unacceptable judicial behavior, considering both the seriousness of the judge's misconduct and the likelihood that it would recur. See In re Judicial Disciplinary Proceedings Against Crawford, 2001 WI 96, ¶38, 245 Wis. 2d 373, 629 N.W.2d 1. The sanction that we impose must also "convey to the public the gravity with which this court views judicial misconduct." Id., ¶39. We impose discipline on a de novo basis, benefitting from but not bound by the panel's recommendation. See id., ¶38.

---

[8] Wisconsin Stat. § 757.81(4)(a) states that misconduct includes "[w]illful violation of a rule of the code of judicial ethics."

10

¶27  In recommending a suspension between five and 15 days, the Judicial Conduct Panel found both mitigating and aggravating factors.  On the mitigating side, the panel noted that Judge Piontek has a long history of community involvement; has no history of prior ethics complaints; and did not act to satisfy personal desires or receive any personal benefit.  In addition, the panel gave "some" weight, but not significant weight, to the fact that Judge Piontek had served only about two years on the bench when he engaged in the conduct at issue.  The panel declined to assign additional weight to this factor on the basis that Judge Piontek's 38 years of practice experience, including as a county prosecutor, should have made him aware of the prohibitions on ex parte communications, judicial involvement in plea bargaining, and independent factual research specific to parties.

¶28  Also on the mitigating side, the Judicial Conduct Panel noted that Judge Piontek now appears to understand that he may not engage in the type of conduct underlying his violations and, thus, has indicated an effort to modify his conduct.  The panel also gave "some" weight, but not significant weight, to the fact that Judge Piontek's misconduct was somewhat isolated, though the panel noted that Judge Piontek implicitly conceded that he had engaged in independent factual investigation in other cases.  The panel further noted that Judge Piontek did not attempt to conceal his misconduct, and, as to the P.E. case, did not seem aware that his behavior was improper.

¶29 The Judicial Conduct Panel went on to discuss a variety of factors on the aggravating side of the scale. The panel noted that Judge Piontek's misconduct occurred while he was representing the judicial system within the courtroom. The nature of his misconduct was serious; it showed bias and had the potential to unfairly affect the outcomes of the cases at issue, and therefore was of the sort that damages public confidence in judicial integrity, judicial impartiality, and fairness in the decision-making process. The panel also determined that, as to the S.S. case, Judge Piontek was not credible in asserting he was unaware of the impropriety of his ex parte communication with the prosecutor in which he commented on the defendant's culpability and the need for any plea agreement to include a felony conviction.

¶30 Also weighing on the aggravating side of the scale, according to the Judicial Conduct Panel, was Judge Piontek's delay in admitting some of his conduct and his attempts to minimize the impropriety of his conduct. For example, concerning the S.S. case, Judge Piontek at first falsely denied to the Judicial Commission that he had made the phone call to the prosecutor or the statements in question. While he eventually admitted his actions, he chalked his initial denial up to a faulty memory and downplayed his statements to the prosecutor as "off-handed." In so doing, the panel wrote, Judge Piontek appeared to have only admitted his wrongdoing when he was caught, in the apparent hope that it would mitigate any punishment.

¶31 Judge Piontek's failure to acknowledge the seriousness of his misconduct was also apparent in his handling of the P.E. case, according to the Judicial Conduct Panel. The panel noted that the court of appeals' decision in the P.E. case quoted extensively from a postconviction hearing in which Judge Piontek did not acknowledge the impropriety of his independent investigation, but instead explained that he conducted his investigation because he was dissatisfied with the information in the PSI——an assertion that Judge Piontek largely repeated in his brief to the panel. Also at the postconviction hearing, Judge Piontek dismissed any notion that he did not give P.E. sufficient time to respond to his internet research as an example of blame-shifting by P.E. Judge Piontek also claimed at the postconviction hearing that he did not rely on the erroneous results of his independent research at sentencing——a claim that the court of appeals rejected as inconsistent with the record.

¶32 The Judicial Conduct Panel declined to accept Judge Piontek's other attempts to downplay the seriousness of his misconduct. For example, Judge Piontek attributed all of his misconduct to a newcomer's misunderstanding of the judge's role in felony court versus more collaborative settings; e.g., the veterans treatment court. The panel was unpersuaded, noting that Judge Piontek, from his long experience as a lawyer, was surely familiar with a judge's normal role. The panel was similarly unpersuaded by Judge Piontek's claim that his heavy criminal caseload helped explain his behavior. The panel found

this explanation implausible given that Judge Piontek's behavior involved devoting extra time to the cases in question.

¶33 The Judicial Conduct Panel cited three cases as particularly analogous to this matter: In re Judicial Disciplinary Proceedings Against Carver, 192 Wis. 2d 136, 531 N.W.2d 62 (1995); In re Judicial Disciplinary Proceedings Against Calvert, 2018 WI 68, 382 Wis. 2d 354, 914 N.W.2d 765; and In re Judicial Disciplinary Proceedings Against Aulik, 146 Wis. 2d 57, 77, 429 N.W.2d 759 (1988). In Carver, we imposed a 15-day suspension after a judge failed to promptly disqualify himself from a criminal case pending against a friend. The case arose from a gambling investigation. The judge failed to truthfully disclose his communications with the defendant, and made on-the-record comments that minimized the seriousness of the offense charged, questioned the legitimacy of the investigation and prosecution of the defendant's case and others like it, and suggested that minimum sentences should be imposed for such crimes. See Carver, 192 Wis. 2d at 137-46. We concluded that the judge's aggravated failure to act impartially, objectively, and truthfully warranted a 15-day suspension. Id. at 154-55.

¶34 In Calvert, we imposed a 15-day suspension as a result of a circuit court commissioner's independent investigation of the facts of a case before him, which included engaging in ex parte communication, and his false statements to the parties that any further calls to police about their dispute would result in disorderly conduct tickets that would be sustained

14

throughout the judicial system.  We held that the commissioner's conduct was "undeniably serious" because "a judge's objectivity and impartiality are critical to the proper functioning of the judicial system." Calvert, 382 Wis. 2d 354, ¶26.

¶35  In Aulik, we imposed a 90-day suspension as a result of a circuit court judge's ex parte communications with counsel on the merits of a contested matter, and failure to fully disclose the communications to counsel for the other party after the communications were discovered.  Aulik, 146 Wis. 2d at 58-59, 73-79.

¶36 Analogizing these cases to the facts at hand, the Judicial Conduct Panel reasoned that Judge Piontek's misconduct deserved more than the sanction he requested:  a reprimand.  The Judicial Conduct Panel also concluded that Judge Piontek's statements during the course of these proceedings showed that he did not appreciate the serious nature of his violations and their impact on the integrity of the judicial system.  The Judicial Conduct Panel therefore recommended that the court impose a suspension ranging from five to 15 days.

¶37 We agree with the Judicial Conduct Panel that a suspension, rather than a reprimand, is in order.  The misconduct in this case is concerning.  Regardless of his newness to the bench or the weight of his caseload, Judge Piontek's ex parte communication with the prosecutor on the merits of a criminal case was obviously unethical; even the newest and busiest judge must know as much.  In addition, Judge Piontek's independent investigation concerning P.E.'s nursing

15

licenses plainly violated his duty of neutrality; it is clearly improper for a judge to both conduct an independent investigation and to fail to give a party a chance to respond to the judge's misinformed allegations based on that investigation. We also share the Judicial Conduct Panel's concern that Judge Piontek's initial denials and later defenses of his conduct suggest that, for much of these proceedings, he failed to fully appreciate the seriousness of his misconduct and its impact on the judicial system. Simply put, this was not a close case under the undisputed facts, and a reprimand, as Judge Piontek requests, would be an insufficient response.

¶38 Finding that suspension is warranted, the question becomes what length of suspension is appropriate. As stated above, the Judicial Conduct Panel recommended a suspension ranging from five to 15 days. We conclude that a suspension at the bottom end of this range is warranted. Acknowledging that the imposition of discipline is not an exact science, we find that Judge Piontek's conduct was not as egregious as that which resulted in 15-day suspensions in Carver and Calvert, and thereby warrants a lesser sanction. In Carver, we noted, among other things, that the respondent-judge used his judicial office in order to make an on-the-record criticism of a gambling investigation. Carver, 192 Wis. 2d at 139, 154. In Calvert, we noted, among other things, that the respondent-judge gave the impression to the litigants before him that the judge had essentially rigged the judicial and criminal justice systems against them. Calvert, 382 Wis. 2d 354, ¶¶19, 21, 26. Judge

16

Piontek's actions, while misguided and serious, do not rise to the same level of impropriety. As we previously noted, the goal of judicial discipline is not to punish the erring judge, but to protect the public from unacceptable judicial behavior. Id., ¶22. We believe this goal will be adequately served by suspending Judge Piontek for five days.

¶39 IT IS ORDERED that Michael J. Piontek is suspended from the office of circuit judge without compensation, and prohibited from exercising any of the powers or the duties of a circuit judge in Wisconsin, for a period of five days, commencing June 24, 2019.

17