COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1081-CR**

STATE OF WISCONSIN

**2018CF426**

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

ALEXANDREA C.E. THRONDSON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

¶1 GRAHAM, J. Alexandrea C.E. Throndson appeals a judgment of conviction for maintaining a drug trafficking place and bail jumping. Throndson argues that she is entitled to resentencing because the circuit court relied on

inaccurate information and exhibited objective bias during sentencing. We reject both arguments and affirm.

## BACKGROUND

¶2    In July 2018, Throndson lived with her boyfriend and her son in an apartment she rented in Baraboo, Wisconsin. After a confidential informant allegedly purchased drugs from Throndson and her boyfriend, police searched the apartment pursuant to a warrant and Throndson and her boyfriend were both arrested. Throndson was charged with delivery of cocaine and maintaining a drug trafficking place, and she was later charged with intimidation of a witness and bail jumping.

¶3    Pursuant to a plea deal, Throndson pled no contest to maintaining a drug trafficking place and bail jumping, both felonies, and the State dismissed the remaining charges outright. The parties agreed to jointly recommend a sentence of thirty-six months of probation without jail time. During the plea hearing, the circuit court confirmed that Throndson understood the maximum penalties for each offense and that the court was not bound by the joint recommendation.

¶4    The circuit court found Throndson guilty and then informed the parties that, in preparation for sentencing, it had run a search of Throndson's name "in the court record statewide." According to the court, it found twenty-three prior cases, which it identified by case number, and it "was able to view the charges and

dispositions" in those matters.[1]  The court cautioned, "I can tell both parties it will be a hard sell today to get me to probation without any jail."

¶5  The circuit court offered Throndson's trial counsel an opportunity to respond, and counsel objected to the court's consideration of "anything that's not been presented to you by the parties."  The court responded that, in its view, it was not inappropriate for the court to review "other court records, provided that the parties are made aware of it prior to sentencing" and have a meaningful opportunity to respond to the information.

¶6  Per trial counsel's request, sentencing was scheduled for a later date. The circuit court informed the parties that it would order a pre-sentence investigation report (PSI).  *See* WIS. STAT. § 972.15 (2019-20).  As it explained, "given [trial counsel's] concern about the court's quick perusal of Ms. Throndson's juvenile criminal and non-criminal history, having a PSI will, first of all, provide everyone with at least one document that will have all of the same information for everybody."  The court also expected a PSI to "perhaps allow for more explanation for some of the past history than merely the charges and the outcomes provide."

---

[1] On appeal, Throndson asserts that the twenty-three case numbers identified by the circuit court were all from her "closed juvenile record," but that characterization does not appear to be accurate.  Based on the case numbers the court identified, it appears that three were juvenile adjudications, three were juvenile ordinance cases, eight were traffic forfeitures, two were non-traffic ordinance cases, three were misdemeanors, and two were felonies.  The parties agree that the juvenile records are sealed and unavailable to the public.  As the court later explained, circuit court judges around the state have electronic access to the court records from all counties in Wisconsin through the state court computer system.

The circuit court also informed the parties that it had reviewed records from Throndson's boyfriend's case to determine "what sentences he received."  Throndson does not make any argument about this aspect of the court's review on appeal, and we discuss it no further.

¶7 The court-ordered PSI itemized Throndson's prior adult offenses, including incidents in 2016 and 2017 in which she was convicted of possession of THC and other offenses. It also summarized statements that Throndson made during her interview with the PSI's author. During that interview, Throndson expressed embarrassment and remorse for maintaining a drug house, but she minimized her knowledge of and involvement in selling drugs. She stated that she did not realize that her boyfriend was using or selling drugs until he overdosed on one occasion, and that she stayed with him because "I loved him and I am a caring person" and "[i]t has been hard for me to walk away from unhealthy relationships." Throndson, who is white, stated that the detective who arrested her "has a vendetta against me because of my past and because I choose to date black men. I don't know why he keeps harassing me." She reported a good relationship with her mother, but a bad relationship with her father, including physical abuse when Throndson was a child. She further reported that her father disapproved of her dating black men and expressed antipathy toward her biracial child. The PSI ultimately recommended a concurrent six-month jail sentence followed by three years of probation, noting that Throndson had provided "false responses" during the PSI process and that this was her third conviction involving illegal drugs.

¶8 The circuit court ended up holding two sentencing hearings in this case. During the initial hearing, the prosecutor and trial counsel both argued in favor of the joint recommendation for probation. The court discussed the severity of Throndson's crimes and reviewed her criminal history and character traits. With regard to her contacts with the juvenile justice system, the court stated:

> Ms. Throndson came through our juvenile system. I wasn't here then. Had she appeared in front of me as a 16-year-old, I'm certain I would have told her your time is running out. When Ms. Throndson sat at that table and she appeared in front of Judge Reynolds in this room in

4

juvenile court, the prosecutor, defense attorney, social worker, Judge, all were here with an eye towards helping her learn the things that she needs to learn to stay out of court as an adult. And I frequently tell those older juveniles, you're running out of time. When you get— when you turn 17, you get charged as an adult, the guy sitting in this chair is not going to be your friend. He's not going to be here to help you. That's not the focus of the prosecution in adult court.

Regarding her history of juvenile and adult offenses, the court further stated:

Ms. Throndson has had chance after chance after chance to get back on track, and what I'm being told here today is, yeah, that's happened now in 2019. It didn't happen during the Columbia County case [where she was charged as an adult with possession of THC and two counts of bail jumping]. In [that case] she entered her plea in April of 2018 and sentencing was delayed for a year to see if she could remain law-abiding, and she couldn't. She was sentenced then … to two years of probation.

¶9 In addition, the circuit court expressed doubt as to the accuracy of some of the statements Throndson made to the PSI writer. According to the court, "it's not credible" that Throndson "didn't realize [her boyfriend] was using heroin as he's overdosing and selling and dealing drugs out of her home…. It's just not credible, which makes it very difficult to identify the reality of the positive things that Ms. Throndson brings to the table." As for her relationship with her father, the court explained, "It's not her dad's fault that—that her dad doesn't necessarily like [Throndson's boyfriend], and there may be many reasons why he doesn't like him besides the color of his skin, but that's what Ms. Throndson focuses on, well, my dad doesn't like black people."

¶10 The circuit court found Throndson untruthful, unwilling to abide by society's rules, and unwilling to accept responsibility for her own actions. It stated that "we need Ms. Throndson on a different track, and I'm left to decide what's the best way to get there." For the count of felony bail jumping, the court

withheld sentence and placed Throndson on probation. For the count of maintaining a drug trafficking place, the court explained that it "considered prison to get her attention," but chose not to impose a prison term because "I'm not satisfied that we're at that point yet." Instead, the court determined that nine months of confinement in jail without the possibility of immediate Huber release "is appropriate and necessary to send the message that something needs to change and that this track that [Throndson's] been on cannot continue."

¶11 Throndson filed a motion for release or stay pending appeal asserting, among other things, that the circuit court violated her right to due process by independently researching her record and relying on inaccurate information in the PSI report. Among other things, Throndson argued that it was improper for the court to review her juvenile records because that information was not publicly available. The court rejected the argument that it was prohibited from looking up the charges and outcomes of Throndson's prior cases, including juvenile cases. It nevertheless vacated the sentence and ordered resentencing to provide the parties a chance to review the contested juvenile record and clarify any evidentiary misunderstandings. Prior to the resentencing hearing, the parties stipulated to the release of Throndson's juvenile records.

¶12 At the resentencing hearing, the circuit court heard arguments about, among other things, its consideration of Throndson's juvenile record. Trial counsel clarified that, of the three juvenile case numbers the circuit court had previously identified, No. 08-JV-20 was a petition for a juvenile in need of protective services, No. 08-JV-20A was a delinquency adjudication, and No. 08-JV-20B was dismissed without any dispositional order. Accordingly, counsel explained, Throndson had been adjudicated delinquent on just one occasion. When counsel complained of errors in the PSI, the court gave counsel the

opportunity to go line by line through the report to identify and correct any statements that Throndson alleged were inaccurate. Both parties again argued in favor of the joint sentencing recommendation for probation, and counsel asked that, if the court did impose jail, it also order Huber release so that Throndson could maintain her employment.

¶13 The circuit court again considered the applicable sentencing factors, this time without making explicit reference to Throndson's juvenile record. As before, the court relied on the PSI author's assessment that Throndson presents herself as a victim and takes no responsibility for her actions. When evaluating Throndson's personal characteristics, the court again expressed concern that she had been dishonest with the PSI author. The court then stated, "[i]t comes out in the PSI Ms. Throndson tries to play the race card and claims that she's being unfairly treated by family members and others because she chooses to date black men."

¶14 Ultimately, the court imposed a sentence that was nearly identical to the one it initially ordered—nine months in jail for maintaining a drug trafficking place, and four years of probation for felony bail jumping. This time, however, the court made Throndson eligible for Huber release after three months of served jail time. Throndson appeals.

## DISCUSSION

¶15 On appeal, Throndson argues that the circuit court sentenced her based on inaccurate information, and that it was not impartial as evinced by the court's independent investigation into her record. Both arguments implicate due process, and our standard of review is de novo. *State v. Tiepelman*, 2006 WI 66,

¶9, 291 Wis. 2d 179, 717 N.W.2d 1 (inaccurate information); *State v. Herrmann*, 2015 WI 84, ¶23, 364 Wis. 2d 336, 867 N.W.2d 772 (impartial decision maker).

## I. Inaccurate Information

¶16    "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *Tiepelman*, 291 Wis. 2d 179, ¶9. "A criminal sentence based upon materially untrue information, whether caused by carelessness or design, is inconsistent with due process of law and cannot stand." *State v. Travis*, 2013 WI 38, ¶17, 347 Wis. 2d 142, 832 N.W.2d 491. To prevail on a claim for resentencing based on inaccurate information, a defendant must show that the court was presented with inaccurate information at sentencing, "and that the court actually relied on the inaccurate information" when sentencing the defendant. *Tiepelman*, 291 Wis. 2d 179, ¶26.

¶17    Throndson's argument fails at the outset because she does not identify any inaccurate information relied on by the circuit court. She asserts that the court "relied on the twenty-three cases [it] discovered during [its] independent investigation" into her prior record, but she does not dispute the existence of those cases, and she does not identify anything that the court said about them that is inaccurate.

¶18    At best, Throndson may be arguing that, because the circuit court identified three juvenile case numbers, the court might have inferred that she was adjudicated delinquent on three separate occasions. There is absolutely no indication in the record that the court made this inaccurate inference. On the contrary, the court indicated that it reviewed court records to determine the "charges" and "dispositions" of each of Throndson's prior cases. Throndson gives us no reason to doubt that these court records would have accurately reflected that,

of the three juvenile case numbers, one was a petition for a juvenile in need of protective services, the second was a delinquency adjudication, and the third was dismissed without any dispositional order.

¶19     We further observe that, even if the circuit court did initially infer that Throndson had been adjudicated delinquent on three occasions, Throndson's argument would fail for two additional reasons. First, the record does not reflect that the court put any substantial emphasis on the number of times that Throndson was adjudicated delinquent when it imposed the initial sentence. *See Tiepelman*, 291 Wis. 2d 179, ¶26 (a defendant must prove that the court actually relied on inaccurate information). Second, Throndson was given the opportunity to correct any potential misunderstanding before she was resentenced, and trial counsel did an able job of showing that the three juvenile case numbers resulted in a single delinquency adjudication. Accordingly, to the extent that the court initially relied on any inaccurate inference about Throndson's juvenile record—and it does not appear to us that it did—any such misunderstanding was corrected before Throndson was resentenced.

## II. Impartiality

¶20     All defendants have a fundamental due process right to an impartial judge. *See State v. Marcotte*, 2020 WI App 28, ¶16, 392 Wis. 2d 183, 943 N.W.2d 911. Throndson's claim is based on objective bias,[2] which occurs when there is "a serious risk of actual bias ... based on objective and reasonable

---

[2] A judge may also be subjectively biased. *See State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. Neither party makes an argument about subjective bias and we limit our analysis to objective bias.

perceptions."[3] *Miller v. Carroll*, 2020 WI 56, ¶24, 392 Wis. 2d 49, 944 N.W.2d 542 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009)). A judge is presumed to act fairly and impartially, and the burden is on the defendant to rebut this presumption by a preponderance of the evidence. *Herrmann*, 364 Wis. 2d 336, ¶24.

¶21 Throndson's argument is primarily founded on her assertion that the circuit court's action of "conducting an independent investigation" into her record demonstrates objective bias. Throndson also argues that the court exhibited bias by rejecting the joint recommendation, and by its unfortunate use of the phrase "play the race card" during sentencing. We address each argument in turn.

### A. Independent Investigation

¶22 We begin by observing that, at times, Throndson's argument about the circuit court's "independent investigation" appears to be limited to its review of her juvenile record. Yet, Throndson makes no principled argument on appeal that a court's review of the charges and dispositions in juvenile cases is different from the court's review of the charges and dispositions of adult criminal cases. And, as the State points out, our supreme court has explained that "adjudications of delinquency, and even juvenile contacts with the court system that do not result in adjudications of delinquency," can be "considered by sentencing judges in adult criminal proceedings." *State v. Hezzie R.*, 219 Wis. 2d 848, 882, 580 N.W.2d 660 (1998). As we understand it, the reason for Throndson's specific focus on her

---

[3] Although both parties use the phrase "appearance of bias" when discussing objective bias, in our analysis, we use the standard that was articulated most recently by our supreme court. *See Miller v. Carroll*, 2020 WI 56, ¶24 & ¶25 n.18, 392 Wis. 2d 49, 944 N.W.2d 542.

juvenile record is her mistaken belief that all of the twenty-three case numbers related to her juvenile record. *See supra*, n.1. Accordingly, we address the court's "independent investigation" into all twenty-three cases, not just the juvenile cases.

¶23   Throndson cites SCR 60.04(1)(g) to support her argument that the circuit court's "independent investigation" demonstrates objective bias. That provision of the Wisconsin judicial code provides that, with certain exceptions, "[a] judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding." SCR 60.04(1)(g). The comments to this Rule state that "[a] judge must not independently investigate facts in a case and must consider only the evidence presented." SCR 60.04(1)(g) (cmt.). The thrust of Throndson's argument is that the court demonstrated its bias by "function[ing] as a prosecutor" when it searched for this information, and that the court's consideration should have been limited to information that was provided by the parties (or perhaps in the court-ordered PSI).[4]

¶24   It is not entirely clear from our case law the extent to which the judicial code's prohibition against independent investigation applies during sentencing. On the one hand, Wisconsin courts appear to give circuit courts broad license to inquire into matters relevant to sentencing. *See, e.g.*, **Handel v. State**,

---

[4] The purpose of the Wisconsin judicial code is to provide rules for judges, and violations of these rules might result in disciplinary proceedings. *See, e.g.*, SCR 60 Preamble. To the extent that a judge's actions in a particular case violate the judicial code, that fact may not be dispositive of whether any litigant in the underlying case is entitled to relief. *Cf.* **State v. Cooper**, 2019 WI 73, ¶22, 387 Wis. 2d 439, 929 N.W.2d 192 (explaining that the fact that a lawyer violated Supreme Court Rules when representing a client did not mean, ipso facto, that the client was entitled to relief in his underlying case). The parties do not discuss the relationship between a violation of the judicial code and a claimant's right to due process in their appellate briefs. The touchstone of our inquiry remains on principles of due process—that is, whether the circuit court's actions resulted in a violation of Throndson's due process right to an impartial judge.

74 Wis. 2d 699, 703, 247 N.W.2d 711 (1976) ("in sentencing, a trial judge may appropriately conduct an inquiry broad in scope and largely unlimited either as to the kind of information considered or the source from which it comes"). Wisconsin courts have explained that, subject to limitations not applicable here, sentencing courts should be in "possession of the fullest information possible concerning the defendant's life and characteristics," *State v. Knapp*, 111 Wis. 2d 380, 385, 330 N.W.2d 242 (Ct. App. 1983), and that it is against public policy for the prosecutor and the defendant to make an agreement to conceal or withhold relevant information from the sentencing court, *State v. McQuay*, 154 Wis. 2d 116, 127-28, 452 N.W.2d 377 (1990).

¶25    On the other hand, other cases have imposed limits on the scope of *independent* investigation that a circuit court may conduct for sentencing purposes.  The underlying facts of *In re Piontek*, 2019 WI 51, 386 Wis. 2d 703, 927 N.W.2d 552 and *State v. Enriquez*, No. 2015AP1850-CR unpublished op. and order (Wis. Ct. App. July 27, 2016) are instructive.  In those related matters, the sentencing judge conducted internet research to determine the status of the defendant's out-of-state nursing licenses because he believed that the defendant had been untruthful to the author of her PSI.  *Piontek*, 386 Wis. 2d 703, ¶16.  In so doing, the judge uncovered what he believed to be incriminating information.  *Id.*  Then, without notifying the parties or providing any opportunity to respond, the judge used the information he uncovered, which turned out to be inaccurate, for sentencing purposes.  *Id.*, ¶¶17-18.  In the judicial disciplinary case that followed, it was determined that the judge's independent internet investigation violated SCR 60.04(1)(g).  *Id.*, ¶22.  And, in the underlying criminal case in which the *Piontek* judge conducted the independent investigation, we determined that the

defendant was entitled to resentencing because her sentence had been imposed based on inaccurate information. *Enriquez*, No. 2015AP1850-CR, ¶1.

¶26 Due to the limited nature of the circuit court's inquiry in this case, we need not consider the outer limits of permissible "independent investigation" during sentencing. Here, the court accessed its own records, and the review was limited to the "charges" and "dispositions" of Throndson's twenty-three prior cases. As for the juvenile cases that were the specific subject of Throndson's challenge, the court explained, "[m]y reliance on the juvenile record was merely that she has been found delinquent as a juvenile and continues then to engage in criminal conduct as an adult right up until however old she was when she was charged with this offense," and that "whatever help we were trying to accomplish through the juvenile court didn't stick." The court further clarified, "I didn't go back and pour through the juvenile record [to inquire into disputed facts or the nature of the juvenile offenses]. That wasn't it at all."

¶27 We have no doubt that the circuit court did not violate Throndson's due process rights by conducting this limited review of court records to determine the charges and dispositions of her prior cases. As our supreme court recently explained in a slightly different context, a sentencing court may access records in the "institutional memory" of the court system so that the court does not "exercise ... its discretion in a vacuum." *State v. Counihan*, 2020 WI 12, ¶48, 390 Wis. 2d 172, 938 N.W.2d 530. Throndson does not cite to *Counihan*, much less argue that there is any meaningful difference between the court records that were consulted here and the court records that the sentencing court consulted in that case. And Throndson has not cited any other authority supporting the proposition that, under these circumstances, a court violates due process by considering its records of the

13

charges and dispositions that resulted from the defendant's prior contacts with the justice system, including the juvenile justice system, before imposing a sentence.

¶28 Importantly, the circuit court informed the parties of what it had uncovered and provided ample opportunity for them to respond to that information. Then, when trial counsel requested an adjournment, the court granted that motion, meaning that counsel had every opportunity to investigate and rebut the limited information that the court uncovered. As the court aptly explained, "defendants, including Ms. Throndson, have the right to know what [it] is considering," and a court "cannot sandbag a defendant with information that [it] found … and then proceed to sentencing without giving the defendant the opportunity to explore that and perhaps refute or provide more accurate information." We agree, and we encourage other courts to be as transparent when considering information found in court records for sentencing purposes.

¶29 For all these reasons, we conclude that the circuit court's limited review of court records to identify the charges and dispositions of Throndson's prior cases does not demonstrate objective bias.

**B. Sentence imposed**

¶30 Throndson next argues that the circuit court evinced its bias when it imposed a jail sentence rather than a sentence consistent with the parties' joint recommendation. This argument is unfounded. As we have explained, sentencing recommendations "are nothing more than recommendations which the court is free to reject." *State v. Bizzle*, 222 Wis. 2d 100, 105 n.2, 585 N.W.2d 899 (Ct. App. 1998). Indeed, "sentencing court[s] always ha[ve] an independent duty to look beyond the recommendations and to consider all relevant sentencing factors." *State v. Smith*, 207 Wis. 2d 258, 281, 558 N.W.2d 379 (1997). Here, the court

explained its reasons for deviating from the joint recommendation, and those reasons are consistent with our supreme court's guidance on the appropriate sentencing factors and considerations. *See State v. Gallion*, 2004 WI 42, ¶76-77, 270 Wis. 2d 535, 678 N.W.2d 197. We conclude that the court's deviation from the joint recommendation is a proper exercise of its sentencing discretion and not an indication of bias.

### C. "Playing the race card"

¶31 Finally, Throndson argues that the circuit court "showed its bias" by stating that Throndson was "play[ing] the race card" and "claim[ing] that she's being unfairly treated by family members and others." To the extent that Throndson contends that the use of the phrase "playing the race card" is inartful and counterproductive, we agree. This phrase is a figure of speech that has often been used to express a speaker's disbelief in the existence of racial bias and rejection of the idea that individuals may receive disparate treatment on account of race. We caution judges to avoid using this phrase because, among other things, it is likely to be counterproductive to the goals of sentencing. One of the primary goals of sentencing is for the court "to explain the reasons for the particular sentence they impose." *Gallion*, 270 Wis. 2d 535, ¶39. Yet, after being accused of "playing the race card," a defendant may be more likely to disregard any otherwise constructive message that the court attempts to convey.

¶32 At the same time, however, we do not conclude that the circuit court's comment evinces objective bias in this case. It is evident from the sentencing transcripts that the court was attempting to convey the message that the time had come for Throndson to proactively take responsibility for her own actions, rather than casting aspersions elsewhere. While inartful, this isolated

comment about "playing the race card" does not undermine our confidence in the court's impartiality.[5]

¶33    In sum, we conclude that Throndson has not rebutted the presumption that the circuit court acted fairly and impartially during sentencing. *See* ***Herrmann***, 364 Wis. 2d 336, ¶24.

## CONCLUSION

¶34    For all the above reasons, we conclude that Throndson has not met her burden to prove that the circuit court relied on inaccurate information or exhibited objective bias during sentencing.  Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

---

[5] To the extent that Throndson advances any other argument on appeal that we have not specifically addressed, we reject it as undeveloped. ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (appellate courts need not consider inadequately developed arguments).