Ryan M. KIERSTEAD, Petitioner-Respondent,

v.

LABOR AND INDUSTRY REVIEW COMMISSION,
Respondent-Appellant,

STERLING WATER, INC., Respondent.

Court of Appeals

*No. 2011AP938. Submitted on briefs February 28, 2012.
—Decided April 3, 2012.*

2012 WI App 57

(Also reported in 817 N.W.2d 878.)

■■■■■■■■■

■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jeffrey J. Shampo* of *Labor and Industry Review Commission*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Carol S. Dittmar* of *Carol Dittmar Law Office, LLC*, Chippewa Falls.

Before Hoover, P.J., Peterson and Mangerson, JJ.

¶ 1. HOOVER, P.J. The Labor and Industry Review Commission appeals an order reversing the Commission's decision, which held that Ryan Kierstead was ineligible for unemployment insurance benefits. We agree with the Commission that Kierstead voluntarily terminated his employment and that the termination was not for good cause attributable to his employer. We therefore reverse the circuit court order and reinstate the Commission's decision.

## BACKGROUND

¶ 2. Kierstead worked as a service and installation technician for Sterling Water, Inc. On September 22, 2009, Sterling issued Kierstead a warning for unsatisfactory conduct. On October 21, 2009, Sterling's service manager, Andrew Holbrook, attempted to issue Kierstead a disciplinary warning notice for Kierstead's interaction the previous day with a coworker. Holbrook asked Kierstead to sign the bottom of the form in a box

that stated: "I HAVE READ AND RECEIVED A COPY OF THIS FORM[.]" Directly above the box, there was an area provided for the "EMPLOYEE[']S STATE-MENT[,]" also with signature and date lines. There is no indication on the form that an employee would be admitting any conduct or wrongdoing by signing the form.

¶ 3. Kierstead told Holbrook he disagreed with the warning notice and would not sign it. Holbrook then referred the matter to the general manager. Kierstead again refused to sign and stated he did nothing wrong. The general manager informed Kierstead there was a section where he could write his own comments. The general manager also told Kierstead he would be terminated if he did not sign the form, and gave Kierstead the opportunity to think it over.

¶ 4. Kierstead responded that he did not need more time and refused to sign the notice. However, he also stated he was not quitting. Kierstead was then terminated. He later testified that he did not sign because he did not believe Sterling would terminate him and he wanted to call its bluff.

¶ 5. The department of workforce development determined Kierstead was ineligible for unemployment benefits. Kierstead appealed to an administrative law judge (ALJ), who affirmed the department's initial determination. The ALJ concluded Kierstead had not been discharged; rather, he voluntarily terminated his employment within the meaning of WIS. STAT. § 108.04(7).[1] The ALJ further held that Kierstead's quitting was not for good cause attributable to Sterling

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

or for any other reason constituting an exception to the suspension of unemployment insurance benefits under § 108.04(7).

¶ 6. Kierstead then appealed to the Commission, which adopted the ALJ's findings and issued a memorandum opinion. Kierstead next sought judicial review. The circuit court reversed the Commission's decision, concluding Kierstead did not voluntarily quit his job. The Commission now appeals.

## DISCUSSION

¶ 7. The Commission argues it properly determined that Kierstead voluntarily terminated his employment within the meaning of Wis. Stat. § 108.04(7), and that his reason for doing so did not permit him to receive unemployment benefits.

¶ 8. As a general rule, an employee who voluntarily terminates employment is ineligible for unemployment insurance benefits. *See* Wis. Stat. § 108.04(7)(a); *Nottelson v. DILHR*, 94 Wis. 2d 106, 118, 287 N.W.2d 763 (1980). One exception to this rule is that an employee may receive benefits if he or she voluntarily terminates employment with good cause attributable to the employer. *See* Wis. Stat. § 108.04(7)(b); *Nottelson*, 94 Wis. 2d at 118. The definitions of voluntary termination and good cause attributable to the employer have been developed by case law. *Nottelson*, 94 Wis. 2d at 118.

¶ 9. "[T]he statutory concept of 'voluntary termination' is not limited to the employee who says, 'I quit.' 'Voluntary termination' under the statute can encom-

350

pass a situation in which the employer discharges the employee." *Id.* at 118–19. Thus, the voluntary termination test is as follows:

> When an employee shows that he or she intends to leave his or her employment and indicates such intention by word or manner of action, or by conduct inconsistent with the continuation of the employee-employer relationship, it must be held . . . that the employee intended and did leave his or her employment voluntarily.

*Klatt v. LIRC*, 2003 WI App 197, ¶ 15, 266 Wis. 2d 1038, 669 N.W.2d 752 (brackets omitted) (quoting *Dentici v. Industrial Comm'n*, 264 Wis. 181, 186, 58 N.W.2d 717 (1953)).

¶ 10. Good cause attributable to the employer means "some act or omission by the employer justifying the employee's quitting; it involves 'some fault' on the part of the employer and must be 'real and substantial.' " *Id.* (quoting *Kessler v. Industrial Comm'n*, 27 Wis. 2d 398, 401, 134 N.W.2d 412 (1965)). The "good cause" must be the actual reason or cause of the decision to quit. *See Kessler*, 27 Wis. 2d at 401. Thus, the Commission may determine the " 'real and substantial' reason" that an employee terminates employment. *See Mervosh v. LIRC*, 2010 WI App 36, ¶ 23, 324 Wis. 2d 134, 781 N.W.2d 236 (quoting *Kessler*, 27 Wis. 2d at 401). Reasons that an employee offers to justify quitting, but which did not actually occasion the resignation, need not be considered. *See id.*

¶ 11. On appeal, we review the decision of the Commission, not the circuit court. *Klatt*, 266 Wis. 2d 1038, ¶ 10. When considering whether an employee voluntarily terminated employment, the employee's

conduct and intent present questions of fact. *Holy Name Sch. v. DILHR*, 109 Wis. 2d 381, 386, 326 N.W.2d 121 (Ct. App. 1982). We must accept the Commission's fact findings if they are supported by substantial and credible evidence. *See* Wis. Stat. § 102.23(6). This requires only that reasonable minds could arrive at the same conclusion as the Commission; it does not require a preponderance of the evidence. *See Holy Name*, 109 Wis. 2d at 386. Further, we must construe the evidence most favorably to the Commission's findings. *See Cornwell Pers. Assocs. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705 (Ct. App. 1993).

■■

¶ 12. Whether Kierstead voluntarily terminated his employment under Wis. Stat. § 108.04(7)(a), and if so, whether it was due to good cause under § 108.04(7)(b), are questions of law. *See Klatt*, 266 Wis. 2d 1038, ¶¶ 10, 13. We give varying amounts of deference to agency legal conclusions. *Brown v. LIRC*, 2003 WI 142, ¶ 13, 267 Wis. 2d 31, 671 N.W.2d 279. The highest level of deference—great weight—is appropriate where: (1) the agency is charged by the legislature with administering the statute at issue; (2) the interpretation of the statute is one of longstanding; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute. *Id.*, ¶ 16.

■■

¶ 13. "Due weight deference [applies] when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute." *Id.*, ¶ 15. "Under the due weight deference standard 'a court need not defer to an agency's inter-

pretation which, while reasonable, is not the interpretation which the court considers best and most reasonable.' " *Id.* (quoting *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660 n.4, 539 N.W.2d 98 (1995)).

¶ 14. "No deference is due an agency's conclusion of law when an issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance." *Id.*, ¶ 14. When no deference is given, a court engages in an independent determination of the questions of law presented, benefiting from the analyses of the agency and the courts that have reviewed the agency action. *Id.*

¶ 15. We generally accord great weight deference to the Commission's WIS. STAT. § 108.04(7) determinations of voluntary termination and good cause. *See Mervosh*, 324 Wis. 2d 134, ¶¶ 14–15 ("[T]he Commission is charged with the duty of administering § 108.04(7)(a) and (b) and has gained significant experience in interpreting and applying those statutes in the discharge of its duty." (Citation omitted.)). Nonetheless, here we conclude the Commission is entitled to no deference. The Commission's interpretation and application of § 108.04(7) is neither uniform nor longstanding in the type of situation presented here. In fact, its analysis has not even remained consistent throughout this case. Ultimately, we agree with the Commission's present interpretation on appeal.

¶ 16. We agree with Kierstead's bald assertion that the Commission's decisions in cases involving similar situations are irreconcilable.[2] The Commission

---

[2] While Kierstead asserted the Commission's decisions were "bipolar," he failed to identify or explain the inconsistency.

has applied conflicting analyses in deciding whether an employee's refusal to sign a disciplinary form constituted a "quit" without good cause when signing would not have been an admission to the alleged misconduct. Some cases have turned on the employee's belief that signing would constitute an admission. In those cases, the Commission has found a discharge, without considering whether the employee's conduct was inconsistent with continuation of the employment relationship. In other cases, the Commission has found a quit without good cause, regardless of whether the employee understood that signing the respective document would not constitute an admission.

¶ 17. For example, in *Strassburger v. Walmart Associates Inc.*, UI Dec. No. 98401594GB (LIRC Nov. 25, 1998), the employee told the manager she was unwilling to sign the form because the allegations were untrue and she did not want to admit them. The manager failed to explain that signing would not constitute an admission. The Commission found that the employee believed signing would be an admission. Consequently, the Commission determined that the employee had been discharged.

¶ 18. Similarly, in *James v. Consolidated Air Express LLC*, UI Dec. No. 086062536MW (LIRC Dec. 30, 2008), the employee stated he could not sign the disciplinary form because he denied one of the allegations. The employer did not point out that the form contained a space for the employee to write his version of the events, nor explain that signing merely acknowledged receipt of the form and would not constitute an admission. The Commission found that the employee did not see the space for writing his own comments, and that the employee believed signing would be admitting the conduct. Again, the Commission determined that the employee had been discharged.

354

¶ 19. Likewise, in *Dehn v. Pankratz Trucking LLC*, UI Dec. No. 09200340EC (LIRC June 8, 2009), the Commission found the employee did not know he could provide his own version of events on the employer's letter, which the employee believed contained "half-truths and lies." The employee explained his concerns to the employer, but the employer did not inform the employee he could make notations on the letter. Relying on *Strassburger*, the Commission deemed the termination a discharge.

¶ 20. In other cases, the Commission has concluded an employee quit without good cause, regardless of whether the employee understood that signing or completing the respective document would not constitute an admission of misconduct. *See Lawless v. Advocap Inc.*, UI Dec. No. 07003402BD (LIRC Nov. 19, 2007); *Beshears v. Intl Cabling Systems*, UI Dec. No. 00004185MD (LIRC Dec. 18, 2000); *Burton v. Signicast Corp.*, UI Dec. No. 00603251MW (LIRC Oct. 23, 2000). In all of these cases, the employees argued they did not sign the document because they believed it would constitute an admission. Yet, the Commission rejected the argument in each case without determining whether the employees knew they could sign without admitting misconduct. In fact, *Beshears* expressly rejected the *Strassburger* decision without explanation, and instead merely "adhere[d] to its reasoning . . . more recently in *Burton* . . . that refusing to sign such an agreement is a quitting, and not with good cause attributable to the employer."

¶ 21. We return now to the statutory inquiry. We first must resolve whether Kierstead voluntarily terminated his employment under Wis. Stat. § 108.04(7)(a), by conduct inconsistent with continuation of the employee-

employer relationship. We think this question is not subject to reasonable dispute. Although Kierstead stated he was not quitting, he nonetheless refused to sign a document, knowing it would cause his termination. These circumstances are the epitome of conduct inconsistent with continuation of the employment relationship. *See, e.g., Klatt*, 266 Wis. 2d 1038, ¶¶ 19, 24. Thus, "it must be held . . . that the employee intended and did leave his . . . employment voluntarily." *Id.*, ¶ 15 (citation omitted).

¶ 22. Kierstead argues, however, that we should conclude Kierstead's conduct was not inconsistent with continuation of the employment relationship because he was "justified" in refusing to do what the employer asked, citing *Nottelson*, 94 Wis. 2d 106.[3] *Nottelson*, however, was a unique case. The employee there had a constitutionally protected religious right not to do what the employer asked, and had obtained a restraining order prohibiting his termination. *See id.* at 111–12, 124–25 (employee's conduct was not inconsistent with continuation of employment relationship); *see also Klatt*, 266 Wis. 2d 1038, ¶¶ 16, 20–24 (distinguishing *Nottelson*). Here, Kierstead had no right—constitutional, judicial, or otherwise—not to sign the document. It is undisputed that signing would not have constituted an admission to the alleged conduct.

---

[3] To be precise, Kierstead does not actually cite *Nottelson v. DILHR*, 94 Wis. 2d 106, 118, 287 N.W.2d 763 (1980), in this portion of his argument. He discusses and argues from the case, but provides no pinpoint citations for his factual and legal assertions, in violation of Wis. Stat. Rule 809.19(1)(e), (3)(a)2. The argument is also inadequately developed. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) (we may disregard arguments lacking either citation or development). We nonetheless address Kierstead's contention because it is the crux of his entire brief.

¶ 23. Before moving to the good cause half of the inquiry, we note that in *Strassburger, James,* and *Dehn,* the Commission merely determined the employee was discharged, without considering the language of Wis. Stat. § 108.04(7) or applying the established two-part analysis set forth in *Klatt* and other cases. In fact, *Strassburger* and *James* set forth their conclusory holdings without citing any legal authority whatsoever. *Dehn,* in turn, merely cited *Strassburger.* Conclusory analyses untethered to the law fail to provide a convincing basis for deference to agency interpretations, regardless of repetition.[4]

¶ 24. We now address whether Kierstead's refusal to sign the warning notice was due to good cause attributable to Sterling. The ALJ in this case did not cite any prior Commission decisions as precedent. However, consistent with *Lawless, Beshears,* and *Burton,* the ALJ determined Kierstead's conduct was a quit without good cause, without considering whether Kierstead believed that signing would constitute an admission.[5] The Com-

---

[4] Kierstead cites *Strassburger, James,* and *Dehn* in support of his justification argument. *Strassburger v. Walmart Assocs. Inc.,* UI Dec. No. 98401594GB (LIRC Nov. 25, 1998); *James v. Consolidated Air Express LLC,* UI Dec. No. 086062536MW (LIRC Dec. 30, 2008); *Dehn v. Pankratz Trucking LLC,* UI Dec. No. 09200340EC (LIRC June 8, 2009). Those cases are of little aid because they failed to address in the first instance whether the respective employee's refusal to sign a document was inconsistent with continuation of the employment relationship when the employee knew that not signing would cause termination.

[5] Like the three Commission decisions with which they conflict, *Lawless, Beshears,* and *Burton* fail to provide a basis for deference because, aside from the inconsistency across decisions, they fail to address whether the respective employees

mission adopted the ALJ's findings and conclusions, and agreed that Kierstead had per se quit without good cause, citing *Lawless*. However, as an alternative rationale for affirming the ALJ decision, the Commission also addressed whether Kierstead quit for good cause because he believed signing would be an admission. The Commission found there was not good cause because Kierstead did not, in fact, hold such a belief.

¶ 25. On appeal, the Commission abandons the per se quit without good cause argument. In fact, it fails to mention that it has ever taken such a position, in this case or any other. Instead, the Commission suggests the proper approach is that a failure to sign an employee disciplinary form is never an automatic quit without good cause when signing would not constitute an admission of conduct, and that this situation always requires a good cause inquiry into whether the employee knew signing would not be an admission. This middle-ground analysis appears to be a novel approach by the Commission. Kierstead, for his part, rejects both analyses—the per se quit without good cause and the middle ground—relying solely on his justification argument, which we rejected above.[6]

---

believed signing would be an admission, much less analyze whether such a belief might constitute good cause attributable to the employer under WIS. STAT. § 108.04(7)(b). *See Lawless v. Advocap Inc.*, UI Dec. No. 07003402BD (LIRC Nov. 19, 2007); *Beshears v. Intl Cabling Sys.*, UI Dec. No. 00004185MD (LIRC Dec. 18, 2000); *Burton v. Signicast Corp.*, UI Dec. No. 00603251MW (LIRC Oct. 23, 2000).

[6] Kierstead asserts that any attempt to distinguish cases "on [the] basis of whether the employee is told that the employee's signature just indicates receipt . . . and not agreement is the ultimate application of form over substance."

¶ 26. We conclude the Commission's novel approach on appeal is the most reasonable application of Wis. Stat. § 108.04(7). It paves a middle ground between the two divergent paths the Commission has followed in past cases—both of which neglected required inquiries—and preserves the rights of both employers and employees. We reject Kierstead's contention that it is improper or unnecessary for employers to obtain a signature on a disciplinary warning document as a record that the employee was in fact presented with, and had an opportunity to dispute, allegations of unsatisfactory performance or conduct. At the same time, all of the Commission decisions cited herein are consistent with the notion that it is unacceptable to discharge an employee who fails to sign a document actually admitting conduct that the employee denies. It would be similarly unreasonable to penalize employees who mistakenly believe they are being compelled to incriminate themselves. In that situation, failure to sign constitutes good cause attributable to the employer under § 108.04(7)(b).

¶ 27. As noted at the outset, we defer to the Commission's findings of fact if they are reasonably supported by the record. *See Cornwell*, 175 Wis. 2d at 544. Here, Kierstead told his manager he would not sign the disciplinary form because he disagreed with its contents. The general manager responded that there was a section where Kierstead could write his own comments. Further, the document's signature block did not contain any indication that the employee was admitting conduct. Instead, it stated the signatory had read and received a copy of the form. This statement speaks for itself. Kierstead had seen, and signed, a copy

359

of the form relative to a different incident only a month earlier. Further, as the Commission decision observes:

> [W]hile the employee testified that he disagreed with the warning, he did not testify that he believed signing the form would be an admission of the conduct. To the contrary, the employee stated that the reason he did not sign the form was that he did not believe the employer would really terminate the employment relationship if he refused and he wanted to call the employer's bluff.

¶ 28. Given the foregoing facts, the Commission reasonably concluded, "Contrary to the assertions made in his petition, the evidence does not support a conclusion that the employee believed signing the form was tantamount to admitting to the conduct." Thus, Kierstead's voluntary termination was not due to good cause attributable to the employer under WIS. STAT. § 108.04(7)(b).

¶ 29. No WIS. STAT. RULE 809.25(1) appellate costs allowed. The Commission's approach to like cases has been inconsistent, the Commission's analysis on appeal is novel, and the Commission unnecessarily complicated resolution of the appeal by failing to acknowledge the inconsistency.

*By the Court.*—Order reversed.