COURT OF APPEALS
DECISION
DATED AND FILED

December 10, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2020AP252**

Cir. Ct. No.  2019CV1982

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

PAUL L. YAPP,

   PLAINTIFF-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION AND DEPARTMENT OF WORKFORCE DEVELOPMENT,

   DEFENDANTS-RESPONDENTS,

WAYNE YAPP (DECEASED),

   DEFENDANT.

APPEAL from an order of the circuit court for Dane County: VALERIE BAILEY-RIHN, Judge.  *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Graham, JJ.

¶1     GRAHAM, J. Paul Yapp was formerly employed by his ailing father as a personal caregiver, and his employment ended when his father moved to a nursing home.[1] The Labor and Industry Review Commission (LIRC) determined that Paul was not eligible for unemployment benefits based on what we refer to as the "personal care exemption" found in WIS. STAT. § 108.02(15)(km) (2017-18).[2] LIRC also determined that Paul was required to repay the benefits that he had received in error. The circuit court affirmed LIRC's decision, and we affirm the circuit court.

## BACKGROUND

¶2     Wayne Yapp was diagnosed with dementia, and his son Paul became his caretaker in 2006. Paul did not have any formal medical training, and he was not licensed to provide nursing or medical care. Among other things, Paul distributed medication to Wayne, monitored his conditions, and performed other tasks that LIRC has referred to as "personal cares."

¶3     Paul was initially paid with funds from Wayne's checking account. Then, in April 2015, Wayne enrolled in Wisconsin's family care program for self-directed support. *See* WIS. STAT. § 46.2897 (pertaining to Wisconsin's "self-directed services option" under which an "enrolled individual selects his or her own services and service providers"); WIS. ADMIN. CODE § DHS ch. 10 (through

---

[1] Because Paul and his father, Wayne Yapp, share a last name, we refer to them by their first names.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise stated.

November 2020)[3] (setting forth parameters of the family care program through which elders and disabled individuals may employ family members to care for them using medical assistance funds). Wayne continued to be Paul's "employing unit," *see* WIS. STAT. § 108.02(14m), but from that point forward, Paul was paid using federal funds distributed through Care Wisconsin.[4]

¶4 Care Wisconsin provided Wayne with a fiscal agent who was responsible for managing his payroll and related financial obligations. Wayne's fiscal agent did not report Paul's wages to the Wisconsin Department of Workforce Development (the Department), nor did the agent make contributions related to Paul's employment to the Wisconsin unemployment reserve fund that the Department administers. As discussed below, this is consistent with Wisconsin's unemployment law, which defines "employment" for purposes of Wisconsin's unemployment insurance fund and determines which employees are eligible for unemployment benefits. WIS. STAT. § 108.02(15).

¶5 Paul's employment ended in December 2016 when Wayne entered a nursing home. Paul later testified that prior to filing a claim, he spoke with several individuals, including an unnamed Department employee, about whether he was

---

[3] All references to the Wisconsin Administrative Code are to the November 2020 Register.

[4] According to LIRC, Care Wisconsin is a managed care organization that provides and coordinates services that allow qualified elders and adults with disabilities to remain in their homes using funds from the federal Medicare and Medicaid programs.

During the unemployment appeals hearing that is the subject of this appeal, Paul testified that he believed that Care Wisconsin was his employer, and LIRC credited Paul's testimony that he believed as much. However, Paul's testimony reflects a misunderstanding of how Wisconsin's family care program works. Although Care Wisconsin and the appointed fiscal agent handled various administrative aspects of Paul's employment, LIRC determined that Wayne remained Paul's employer.

eligible for unemployment benefits. According to Paul, he specifically told the employee that he had been providing care to his father, and the employee advised him that he was eligible for benefits.

¶6     If given, the unnamed Department employee's alleged advice would have been contrary to WIS. STAT. § 108.02(15)(km). That statute provides that, under most circumstances,[5] individuals are not eligible for unemployment benefits if the employment consisted of "personal care" service "provided by [the] individual to an ill or disabled family member who is the employing unit for such service." *Id.* For ease of reference, we refer to this statute as the "personal care exemption."

¶7     Paul applied for unemployment benefits in June 2017.[6] The Department did not have any reported wages on file for Paul, so it sent out two requests for wage information: a "Form UCB-19" addressed to Paul; and a "Form UCB-719" addressed to his employer, Wayne Yapp. By the time the Department sent these forms, Wayne was no longer enrolled in the family care program and no longer represented by a fiscal agent. Paul, acting as Wayne's power of attorney, completed Form UCB-719 by entering his own wages from 2016. The form instructed the employer to write "excluded" after any wage entry for which wages

---

[5] Employing units can elect to make contributions into the unemployment reserve fund when they hire family members as caregivers, thereby rendering the caregivers eligible to receive unemployment benefits. *See* WIS. STAT. § 108.02(15)(km) (providing an exception to the personal care exemption if "the employer elects otherwise with the department's approval"). It is undisputed that Wayne did not elect to make contributions for Paul, so we discuss this exception to the personal care exemption no further.

[6] The parties dispute whether the Department asked Paul if he was related to his employer at the time he filed the claim. This dispute is discussed in greater detail in the discussion section below.

"were for work performed in excluded employment." Paul did not indicate that his wages were "excluded" on the Form UCB-719; he later testified that he did not believe that his wages were excluded based on the conversation he allegedly had with the unnamed Department employee before he filed his claim.

¶8 The Department issued an initial determination approving Paul's application, and it paid Paul nearly $6,000 in benefits over the next year. Then, in June 2018,[7] the Department initiated an investigation because it had discovered that Paul was Wayne's son. The Department concluded that Paul was not eligible for benefits, and it required him to repay the benefits that it determined he had already received in error.

¶9 Paul appealed the Department's decision, and the matter was heard by an administrative law judge (ALJ) employed by the Department. *See* WIS. STAT. § 108.09(3)(a). Paul argued that the personal care exemption did not apply to his employment because he had provided nursing and medical care—in addition to personal care—for Wayne. In the alternative, he argued that any error was exclusively the fault of the Department, and therefore, that the Department should waive his obligation to repay the benefits he had already received. *See* WIS. STAT. § 108.22(8)(c) (identifying circumstances under which the Department may waive recovery of benefits paid in error).

---

[7] LIRC's decision erroneously states that the investigation occurred in 2017, and that during the investigation, Paul was asked about the answers that he provided when he applied for unemployment in June 2016. These dates are not correct; the administrative record demonstrates that Paul applied for unemployment in June 2017 and the Department's investigation occurred a year later in June 2018.

5

¶10  Paul makes a number of procedural arguments challenging the manner in which the ALJ handled the administrative proceedings that followed; his arguments and the timeline of the proceedings are recounted in greater detail below.  For now, it suffices to note that the ALJ held three hearings:  the first on July 23, 2018, the second on August 20, 2018, and the third on February 20, 2019.  The ALJ initiated the second hearing on her own motion to take evidence regarding Exhibit 5, a document that purports to be a "Claim Summary" of Paul's initial online application for benefits.  The third hearing was the result of a remand by LIRC to collect evidence about why the Department failed to discover that Paul was ineligible when he first applied for benefits.  The ALJ ultimately determined that Paul was ineligible for benefits and had to repay the benefits he had already received.  Paul appealed this decision to LIRC.

¶11  LIRC issued a final decision affirming the ALJ's decision on June 26, 2019.  Among other things, LIRC determined that the benefits Paul received "were paid to the employee in error and are overpaid."  It also determined that "[r]ecovery of the overpayment cannot be waived under WIS. STAT. § 108.22(8)(b)" because the overpayment "resulted from the fault of the employee, as defined in WIS. STAT. § 108.04(13)(f)."  LIRC specifically found that, "[a]lthough not intentional, [Paul] failed to provide correct and complete information" to the Department on two occasions:  first, in his initial application (that is, Exhibit 5); and second, when he completed Form UCB-719 as power of attorney for Wayne.

¶12  Paul petitioned for judicial review pursuant to WIS. STAT. § 108.09(7), and the circuit court affirmed LIRC's decision.

**STANDARD OF REVIEW**

¶13    As in any appeal contesting the denial of unemployment benefits, we review the decision issued by LIRC, rather than the decision issued by the circuit court.  *Operton v. LIRC*, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426; *Klatt v. LIRC*, 2003 WI App 197, ¶10, 266 Wis. 2d 1038, 669 N.W.2d 752.

¶14    Whether a former employee is entitled to unemployment benefits under WIS. STAT. ch. 108 presents a mixed question of law and fact.  *Klatt*, 266 Wis. 2d 1038, ¶10.  This court is not bound by LIRC's interpretation of a statute. *See Operton*, 375 Wis. 2d 1, ¶19.  The proper interpretation and application of the unemployment statutes present questions of law, which we review independently without deference to LIRC's decisions.[8]  *See Kierstead v. LIRC*, 2012 WI App 57, ¶12, 341 Wis. 2d 343, 817 N.W.2d 878; *Klatt*, 266 Wis. 2d 1038, ¶¶10, 13.  We will uphold LIRC's factual findings if they are supported by credible and substantial evidence.  WIS. STAT. § 108.09(7)(f); *Operton*, 375 Wis. 2d 1, ¶18.

**DISCUSSION**

¶15    We first consider whether Paul was eligible for unemployment benefits, and we conclude that he was not.  Next, we review LIRC's determination that Paul must repay the benefits that he received in error, and we conclude that

---

[8] The parties dispute whether we should, as "a matter of persuasion," give "due weight" to LIRC's interpretations of WIS. STAT. ch. 108, including its interpretation of the personal care exemption. *See Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶108, 382 Wis. 2d 496, 914 N.W.2d 21; *DWD v. LIRC*, 2018 WI 77, ¶4 n.4, 382 Wis. 2d 611, 914 N.W.2d 625.  We need not and do not resolve this issue because our conclusions would be the same whether or not we give due weight to LIRC's conclusions of law.

this determination is supported by credible and substantial evidence. Finally, we consider and reject Paul's procedural arguments.

## I. LIRC's Eligibility Determination

¶16 Paul contends that he is eligible for unemployment benefits, and that LIRC erred in determining otherwise. Resolution of this issue turns on the definition of "employment" in Wisconsin's unemployment insurance statute, WIS. STAT. § 108.02(15).

¶17 WISCONSIN STAT. § 108.02(15) recognizes that some types of paid services are covered employment for purposes of eligibility for benefits, and other types of paid services are not. As noted above, the personal care exemption specifically excludes service that is "provided by an individual to an ill or disabled family member who is the employing unit for such service, if the service is personal care …." Section 108.02(15)(km). The legislature passed the personal care exemption in 2009, *see* 2009 Wis. Act 287, § 13, and according to LIRC, it was intended to relieve elderly and disabled persons of the responsibility of making contributions to the unemployment reserve fund when they hire relatives as personal care providers. Based on the evidence presented at the hearing, LIRC determined that Paul provided personal care services to his father, and that these services were performed in excluded employment within the meaning of the personal care exemption.

¶18 Neither party attempts to define "personal care" and we need not dwell on the precise definition of that term in this context. Paul acknowledges that the services he provided included personal care and tacitly acknowledges that he was hired to provide such services. However, Paul contends that he also provided medical and nursing services, that he was a "key part of the medical care" Wayne

8

received, and that without his care, Wayne "would have needed to be admitted to a nursing home that specialized in dementia care."  Paul testified that, in addition to assisting Wayne with activities of daily living and instrumental activities of daily living, he also cleaned Wayne's wounds, collected and tested his urine samples, monitored his medication dosages and requested dosage changes when antibiotics were ineffective, cleaned impacted feces, and cleaned and monitored his catheters. According to Paul, employees can escape the personal care exemption if the services they provide "encompass more than personal care."  Stated differently, Paul argues that there is an exception to the personal care exemption, and that he falls within that exception.

¶19     It appears that LIRC credited Paul's testimony about the specific services he provided to Wayne, and the record provides no reason to doubt it.  We have no reason to question that Paul provided essential care that helped to keep Wayne out of a nursing home for years—that is, after all, one of the aims of Wisconsin's family care program.  *See* WIS. ADMIN CODE. § DHS 10.11 (noting that the program is "designed to help families arrange for appropriate long-term care services for older family members").  Nor do we have reason to question that over the years, Paul gained significant insight into Wayne's medical condition and developed skills to address his needs.

¶20     However, we disagree that the day-to-day duties Paul described during the hearing transformed his employment from "personal care" to another type of employment that might be covered under Wisconsin unemployment insurance law.  The legislature made a policy choice to exempt elderly and disabled individuals from paying into Wisconsin's unemployment insurance fund when they hire relatives to provide personal care services; as a consequence of this choice, such employees are not eligible for unemployment benefits when their

9

employment ends. The care Paul provided to his father is the type of care that family members routinely provide to help ill or disabled relatives address their medical conditions, and that such individuals may require. Paul cites no authority to support his contention that employees escape the personal care exemption by providing these types of services. Nothing in the plain text of the statute carves out any such exception, and such an exception could render the personal care exemption essentially meaningless. *See **Belding v. Demoulin***, 2014 WI 8, ¶17, 352 Wis. 2d 359, 367, 843 N.W.2d 373 ("Statutory interpretations that render provisions meaningless should be avoided.").

¶21 Paul also suggests that LIRC's decision was unduly influenced by the fact that he is not licensed to provide medical care. He contends that nothing in the unemployment statutes "mandates professional medical training or licensure for medical care rather than personal care to be provided." This argument misses the point. Paul's admission that he was not licensed to provide medical care is probative of the kind of services that he was hired and paid to provide to Wayne. Paul's wages were funded by Medicare or Medicaid, and Paul does not explain why these programs would pay for unlicensed individuals to administer services that it classifies as nursing or medical care. The fact that Paul is not a licensed provider supports LIRC's determination that he was hired to provide personal care services, not nursing or medical care, for his father.

¶22 We conclude that LIRC did not misinterpret WIS. STAT. § 108.02(15)(km), and that it correctly determined that Paul provided personal care to his father. Accordingly, we conclude that LIRC did not err when it determined that Paul was not eligible for unemployment benefits.

10

## II. LIRC's Repayment Determination

¶23    We now turn to LIRC's decision to require repayment of the benefits that the Department paid to Paul in error.  Paul argues repayment of these benefits should be waived because he relied on inaccurate advice from a Department employee, and because the Department has not demonstrated that Paul provided any incomplete or incorrect information.

¶24    The pertinent statutes are WIS. STAT. §§ 108.22(8)(c)1. and 108.04(13)(f).  Section 108.22(8)(c)1. provides that the Department "shall waive recovery of benefits that were erroneously paid" if the overpayment "was a result of a departmental error" and "did not result from the fault of the employee [here, Paul] as provided in § 108.04(13)(f), or because of [the employee's] false statement or misrepresentation."  Section 108.04(13)(f) provides that one way an employee can be at "fault" is if that employee "fails to provide correct and complete information to the department."  Taken together, these two statutes provide that, *even if* the Department is partially at fault for an overpayment, it will not waive repayment if the employee was *also* at fault.  And an employee can be at fault if the employee provided incorrect or incomplete information to the Department.

¶25    There is evidence in the record suggesting that the Department was at least partially at fault for the overpayment.  LIRC did not make any findings on this point, but, to the extent that an unnamed Department employee advised Paul that he was eligible for benefits, that advice would not have been correct.  Additionally, it appears that the Department overlooked information that it had at its disposal when it initially approved Paul's claim for benefits.  The Department's records showed that Paul and Wayne shared a last name and a mailing address,

suggesting a familial relationship; additionally, there was testimony that Wayne's fiscal agent informed the Department on two prior occasions that Paul was Wayne's son and ineligible for benefits.[9]

¶26　However, any evidence suggesting Department error is not dispositive. As discussed above, the question is whether Paul was also at fault for providing incorrect or incomplete information to the Department. LIRC determined that Paul provided incorrect or incomplete information to the Department in two different documents: Form UCB-719 and Exhibit 5. We need not decide whether the information Paul provided in Form UCB-719 constitutes incorrect or incomplete information provided by an employee because there is substantial and credible evidence that Paul provided incorrect information in Exhibit 5.[10]

---

[9] A Department witness nevertheless testified that the Department "had no way of knowing" that Paul worked in excluded employment "because the employer didn't raise the issue and the claimant didn't report it," and because there was "no one to notice" that Paul's last name "looks very similar to the employer's last name." As we understand this testimony, the Department witness suggested that no human being actually reviewed the claim before it was approved. This explanation is difficult to square with the undisputed facts of this case. As we have explained, it is undisputed that there were no wages on file for Paul, and that the Department did not just automatically approve his claim—instead, the Department sent forms to the employer and the employee at the very same address, and it approved Paul's benefit claim only after it reviewed Paul's handwritten responses to these requests.

[10] As mentioned above, Form UCB-719 was a document that was sent to the employer, and among other things, it asked the employer to indicate whether any of the reported wages were "excluded." Paul argues that his response does not constitute incorrect or incomplete information provided by an employee for two reasons. First, he argues that he filled the form out in his capacity as power of attorney for the employer, not as an employee. Second, he argues that the alleged inaccuracy related to a mistaken conclusion of law rather than a misrepresentation of fact. We do not address these arguments because they are not dispositive. *Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

(continued)

¶27    To explain this conclusion and provide context for Paul's arguments to the contrary, we present additional background information about Exhibit 5 and how it came to be part of the record. Exhibit 5 is a four-page document that purports to be a "Claim Summary." It appears to have been printed out from a computer system, and it supposedly contains the information that Paul provided to the Department in his online application for unemployment benefits. Among other things, Exhibit 5 identifies "WAYNE YAPP" as Paul's employer. It contains a number of eligibility questions, including: "Did you, your spouse, your parents, and/or your children, fully or partially own or control this employer …?" And in response to this question, there is a checkbox marked "No." If Exhibit 5 is what it purports to be, it constitutes substantial evidence that Paul provided incorrect information to the Department in his answer to this question.

¶28    The ALJ introduced Exhibit 5 at the outset of the second hearing, and Paul immediately questioned its authenticity. In response, the ALJ asserted that Exhibit 5 is a "printout of a Wisconsin unemployment insurance claim summary," "a claim that [Paul] filed for June 24, 2017," and a "department record." Paul testified that he did not have any independent recollection of filling out the claim summary. He testified that he had no idea whether he had supplied the answers or whether the summary was filled out by someone else. And he testified that at the time he applied for benefits, he believed that Care Wisconsin—not Wayne Yapp—was his employer because it was the source of his income, set his wages and hours, and assessed his performance.

---

We also note that the circuit court determined that Paul provided inaccurate information to the Department on two additional occasions. We do not consider these additional occasions because they are not dispositive.

13

¶29 Paul's attorney objected to the admissibility of Exhibit 5 based on lack of foundation (and for other reasons discussed in greater detail in the following section of this opinion). The ALJ overruled Paul's objection and admitted Exhibit 5. She stated: "[A]s far as to the foundation, it is a department record and I can consider it, which I will."[11]

¶30 If the evidence were limited to what was presented at the second hearing, we might have difficulty determining that Exhibit 5 constitutes substantial and credible evidence that Paul provided incorrect information to the Department. This is because, whether or not it is properly classified as a "department record," no evidence was introduced during the second hearing about whether the information on Exhibit 5 was provided by Paul or by someone else.

¶31 However, this gap in the record was cured during the third hearing, which followed a remand from LIRC. During that hearing, a Department witness specifically testified that Exhibit 5 contained the "actual answers" that Paul gave when filing a claim for benefits rather than a "summary of those answers," and that the answers had been provided by Paul rather than someone else. The exchange between Paul's attorney and the Department witness proceeded as follows:

> Q: What is this, [Exhibit 5]?

---

[11] The rules of evidence do not strictly apply in unemployment hearings. WIS. STAT. § 108.09(5); WIS. ADMIN. CODE § DWD 140.16(1). Additionally, certain statutes allow an ALJ to take "administrative notice" of Department records. WIS. ADMIN. CODE § DWD 140.16(2).

Paul argues that we should conclude that Exhibit 5 was inadmissible as presented at this hearing, but we decline to reach that conclusion in light of the relaxed evidentiary standards at unemployment hearings, the deferential standard of review that we apply to LIRC's findings of fact, and the evidence adduced at the third hearing, which tended to demonstrate that Exhibit 5 was a Department record and the proper subject of administrative notice by the ALJ.

A: What is – it is a copy of the answers [Paul] gave for his internet initial claim. It is his claim summary.

Q: Okay. So it's a replica of the actual answers or is it a summary of those answers?

A: These are his answers.

Q: The actual answers or a summary of those answers?

….

A: These are the answers he gave. In other words, they weren't paraphrased if that's what you're getting to.

¶32 To be sure, Paul questions the veracity of the Department witness's testimony. He points to an email sent by a Department investigator, which asserts: "I don't see in reviewing the initial claim snapshot viewer that he was asked if he was related to Wayne Yapp …." He points to his own testimony that he had no recollection of filling out Exhibit 5. And he contends that it makes little sense that Paul would have listed "WAYNE YAPP" as his employer on Exhibit 5, since he mistakenly believed that Care Wisconsin was his employer. However, under the applicable standard of review, we search for reasons to affirm LIRC's findings of fact, not to negate them. *Ide v. LIRC*, 224 Wis. 2d 159, 165, 589 N.W.2d 363 (1999). Exhibit 5, combined with the Department witness's testimony that Exhibit 5 contained Paul's "actual answers," support LIRC's finding that Paul provided incorrect information to the Department.

¶33 Accordingly, we conclude that there is credible and substantial evidence in the record to support LIRC's finding that, even if unwittingly, Paul provided incorrect information to the Department. Therefore, we cannot conclude that LIRC erred when it denied Paul's request to waive repayment of the benefits. Although there may also be evidence that would support the opposite finding, the

15

applicable standard of review does not allow us to weigh all the evidence and come to an independent conclusion. *See id.*

### III. Procedural Arguments

¶34    Finally, Paul advances a number of procedural arguments about the administrative hearings and appeal.  He contends, among other things, that "it was a violation of due process, an abuse of discretion, and departmental error [for the ALJ] to continue the hearing for a second day," and that LIRC "exceeded its authority" when it remanded the matter for a third hearing.

¶35    We begin with some general observations about due process. Generally, due process requires notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Paul's argument is not that he was denied an opportunity to be heard, but rather that there was too much process and too many hearings in this case.  He argues, in essence, that the ALJ should have decided the case exclusively based on the evidence presented at the first hearing, at which point "there was no evidence in the hearing record to indicate" that Paul "supplied a misleading answer to the Department about his familial relationship."  The aim of each of Paul's procedural arguments is to demonstrate that the ALJ and LIRC should not have considered Exhibit 5 at all.

¶36    With these general observations in mind, we address each of Paul's process-based arguments in turn.

¶37    First, Paul argues that the ALJ lacked authority to continue the hearing for a second day.  He points to the fact that, at the conclusion of the first hearing, the ALJ indicated that "the hearing record is now closed" and that she would be issuing a written decision shortly.  Then, the following day, the ALJ sent

16

a letter indicating that she would "be continuing this hearing to take additional testimony." It was at the second hearing that the ALJ presented Exhibit 5 and admitted it into the record over Paul's objection.

¶38 We agree with LIRC that the ALJ had authority to continue the hearing for a second day of testimony. Paul cites WIS. STAT. § 108.09(4)(a) for the proposition that an appeal tribunal should endeavor to "promptly decide" unemployment appeals. However, § 108.09(4)(b) specifically allows a hearing to be "continued, adjourned or postponed from time to time" at the tribunal's discretion. Paul identified no authorities that would limit this discretion. He points to WIS. ADMIN. CODE § DWD 140.15(2), which specifically provides that the tribunal may continue a hearing "when the hearing cannot be completed in the time scheduled," but this rule does not purport to limit the tribunal's authority to continue a hearing under other circumstances. And Paul does not consider the effect of § 108.09(4)(f), which allows the tribunal to reopen a hearing on the its own motion to take additional testimony as warranted within 21 days after issuing a decision. If the tribunal has statutory authority to reopen the record even after it has issued a decision, we do not see why it would lack authority to do so earlier in the proceedings. *Cf.* ***R.F. Gehrke Sheet Metal Works v. Mahl***, 237 Wis. 414, 297 N.W. 373 (1941) (stating the statutory interpretation principle that "the greater [power] includes the lesser"). Paul does not point to any statute, rule, or case that would prohibit the ALJ from continuing the hearing to take additional testimony simply because she stated at one point that the record was "closed."

¶39 Second, Paul contends that the ALJ exceeded her "role and responsibility as [an] administrative law judge" when she obtained Exhibit 5 from Department files. He argues that this action demonstrates that she was biased against him. In evaluating this argument, it is important to acknowledge that

17

Wisconsin unemployment hearings can differ from a typical adversarial process in which two sets of attorneys represent opposing views and provide evidence and arguments for consideration by a neutral judge. In unemployment hearings, the tribunal acts as a decision maker—but also as a Department employee who may be expected to play an investigatory role and has a "responsibility to develop the facts." WIS. ADMIN. CODE §§ DWD 140.15(2) and 140.16(1).[12] Paul cites *Wisconsin Jud. Comm'n v. Piontek*, 2019 WI 51, 386 Wis. 2d 703, 927 N.W.2d 552, for the principle that a court may not base its decisions on its own "independent investigations of public record." But *Piontek* is inapt because it concerns the role of a circuit court judge, not the role of an ALJ presiding over an unemployment hearing. *Piontek*, 386 Wis. 2d 703, ¶1. Here, Paul's employer did not appear at the hearing, and the ALJ assumed her legal responsibility to

---

[12] This dual role as decision maker and investigator is expressly approved of by the handbook issued by the U.S. Department of Labor upon which Paul relies. *See* OFFICE OF UNEMPLOYMENT INS., ET HANDBOOK NO. 382, HANDBOOK FOR MEASURING UNEMPLOYMENT INSURANCE LOWER AUTHORITY APPEALS QUALITY (March 2011, 3rd ed.), https://wdr.doleta.gov/directives/attach/ETAH/ET_Handbook_No_382_3rd_Edition.pdf. That handbook notes that "[s]tate laws differ on the hearing officer's obligations to obtain evidence[,]" *id.* at 49, and it further provides:

> If … claimants were required on appeal to depend on their own resources, it is doubtful that such a procedure would be conductive to the disclosure of truth and the attainment of justice. On the other hand, claimants should not be permitted to prevail because of the State agency's failure to adduce disqualifying facts which the appeal tribunal, through its own resources, is able to elicit.
>
> The hearing is not a contest between two opposite parties, with the appeal tribunal sitting on the sidelines. The hearing officer is, in effect a board of inquiry, responsible for getting complete and accurate facts. It is that responsibility of appeal tribunals which appropriately substitutes for a burden of proof on the parties in unemployment insurance hearings.

*Id.* at 116.

accurately develop the facts.[13] That she did so does not demonstrate that she acted as a hostile adversary who was biased against Paul.

¶40    Third, Paul argues that the ALJ's reliance on Exhibit 5 was improper because it was not included in the hearing file that was provided for his attorney's review prior to the second hearing. By way of background, the tribunal is to prepare a hearing file, which "shall contain the papers, documents and departmental records relating to the issue of the hearing." WIS. ADMIN. CODE § DWD 140.09(1)(a). Such files are available for inspection by the parties. *Id.* Paul's attorney inspected the hearing file on the final business day before the second hearing, and he contends that Exhibit 5 was not included in the hearing file at that time. Paul argues that he was ambushed by Exhibit 5 at the second hearing, which was fundamentally unfair because inspection of the hearing file is "the sole means of discovery available to a party or representative prior to a hearing." Section DWD 140.09(1)(b).

¶41    Of all of Paul's procedural complaints, we are most troubled by this one. LIRC contends that it is common for documents to "not make it into a hearing file until immediately before the hearing or even just after [the hearing] begin[s]." Here, however, it appears that Exhibit 5 was printed the day after the first hearing, long before the second hearing took place. Under WIS. ADMIN. CODE § DWD 140.09(1), Paul's attorney should have had the opportunity to

---

[13] In many appeals related to unemployment benefits, employers participate in the proceedings and advance positions that are adverse to their former employees. In such cases, the employer will necessarily play a greater role in developing the facts, and it may be less incumbent upon the tribunal to assume the responsibility of doing so.

review this "departmental record[] relating to the issue of the hearing" when he inspected the hearing file on the last business day before the second hearing.

¶42    Although this incident is concerning, Paul does not cite any rule that precludes a tribunal from considering a document as evidence under these circumstances. Nor does he establish that he was unfairly prejudiced by the ALJ's failure to place Exhibit 5 in the hearing file in this case. That is, he does not identify any evidence or argument that he would have been able to present if his attorney had reviewed Exhibit 5 in advance of the second hearing. And here, if there was evidence or an argument that he could have presented with advance notice of Exhibit 5, he had an additional opportunity to present it during the third hearing, following the remand from LIRC. WISCONSIN STAT. § 108.09(7)(dm) instructs us to disregard any irregularity or error in the proceedings unless it appears that the complaining party was damaged by it, and we cannot conclude that Paul was damaged by the ALJ's failure to place Exhibit 5 in the file prior to the second hearing.

¶43    Finally, Paul argues that LIRC lacked authority to remand for a third hearing. LIRC has broad authority to remand for the taking of evidence, WIS. STAT. § 108.09(6)(d), and Paul's argument to the contrary is difficult to follow. Paul argues that LIRC remanded for a third hearing "to get testimony from a Department staffer about why there were two unemployment account numbers connected to Wayne Yapp," and in so doing, LIRC violated the principle that it may not take administrative notice of information that is contained within its files. *See Amsoil Inc. v. LIRC*, 173 Wis. 2d 154, 166, 496 N.W.2d 150 (Ct. App. 1992). But Paul does not explain how ordering a hearing based on certain information is equivalent to taking administrative notice of that information. Unlike in *Amsoil*, LIRC did not make any findings or issue any decision based on any information

found in its files. *See **id.*** at 162 (stating that, in that case, "LIRC took 'administrative notice' of the entire … record" of a separate proceeding "to aid in its decision"). Instead, LIRC appeared to have been troubled by the Department's failure to discover information that it believed to be readily available and that should have alerted the Department that Paul was ineligible for benefits. LIRC remanded for additional fact finding about whether the Department was at fault. The ALJ took additional evidence as directed, that evidence became part of the record, and LIRC's final decision referenced that evidence. Under these circumstances, we are not persuaded that LIRC's remand order violated ***Amsoil***.[14]

## CONCLUSION

¶44 For all of the above reasons, we conclude that Paul was not eligible for unemployment benefits, and LIRC did not err when it determined that the overpayment of benefits he received could not be waived. Accordingly, we affirm the circuit court.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

---

[14] Paul also makes a number of additional arguments about the circuit court's decision, but we do not address them because we review LIRC's decision, rather than the decision of the circuit court. ***Operton v. LIRC***, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426. To the extent Paul attempts to raise additional issues about the proceedings before LIRC or the ALJ that are not specifically addressed in this opinion, we deem those arguments insufficiently developed to warrant a response. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).